# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
### November 5, 2009 Session

## IN RE ANGELA E. ET AL.[1]

**Appeal by Permission from the Court of Appeals, Western Section**
**Chancery Court for Madison County**
**No. 56951/63549     Ron E. Harmon, Chancellor**

---

**No. W2008-00120-SC-R11-PT - Filed February 16, 2010**

---

We granted this appeal to resolve a conflict within our Court of Appeals regarding the required contents of a trial court's written order following a proceeding to terminate parental rights where the parent losing the rights does not oppose the termination. In this case, the trial court's written order omitted findings of fact and conclusions of law concerning the grounds for termination. After rejecting the father's contention that his rights were surrendered rather than terminated, the Court of Appeals held that the findings and conclusions required by statute were unnecessary because the father had consented to the petition to terminate. We agree with the Court of Appeals' conclusion that the trial court terminated the father's parental rights. Nonetheless, we hold that the trial court's written order of termination must contain the findings and conclusions set forth in Tennessee Code Annotated sections 36-1-113(c) and (k), even where the parent consents to the termination of parental rights. Because the trial court's order does not comport with the statute, we must reverse the judgment of the Court of Appeals and remand to the trial court for a new hearing and the preparation of a written order that complies with the statutory requirements based on the evidence introduced.

**Tenn. R. App. P. 11; Judgment of the Court of Appeals Reversed and Case Remanded to the Chancery Court for Madison County**

CORNELIA A. CLARK, J., delivered the opinion of the Court, in which JANICE M. HOLDER, C.J., GARY R. WADE, WILLIAM C. KOCH, JR., and SHARON G. LEE, JJ., joined.

David Sandy, Memphis, Tennessee, for the appellant, Ifeatu E.

---

[1] This Court has a policy of protecting the identity of children in parental termination cases by initializing their last names.

Michael A. Carter, Milan, Tennessee, for the appellees, Vernessa T. and Siegfried T.

**OPINION**

Factual and Procedural Background

Prior to their divorce on November 30, 2001, Vernessa T. ("Mother") and Ifeatu E. ("Father") had three children: Angela E., Ekene E., and Ember E. The eldest child was twelve years old at the time of the hearing on the termination of Father's rights. After the divorce, Mother married Siegfried T. ("Stepfather") on June 15, 2002. Mother testified that, during the entirety of her second marriage, the children lived with her and Stepfather.

Since the divorce, Mother and Father, both physicians, have contentiously litigated their rights and obligations relative to the children. On July 15, 2002, Mother filed a petition for contempt, alleging that Father had not met various court-ordered financial obligations—including child support, insurance premiums, and medical expenses—set forth in the Supplemental Final Decree entered in conjunction with the divorce. On August 16, 2002, the trial court found Father in civil contempt, which Father purged the following month by paying $10,900. In its contempt order, the trial court also suspended Father's visitations with the children based on Mother's testimony "that the children might suffer irreparable harm when they are in the custody and control of [Father]." After being evicted from his medical office, Father moved in November 2002 to reduce his support obligation to the minimum allowed under state law while he was unemployed. Mother filed a motion to dismiss Father's motion to modify the child support amount. In July 2003, Father filed a petition to reinstate his visitation rights. The record does not reflect whether the trial court heard Father's motions.[2]

_____

[2] Father filed the motion to reduce his support obligation pro se. The matter was set for hearing on March 19, 2003. According to Mother's motion to dismiss, Father called the court on the day of the hearing and said that he would not be able to come to court because of a family emergency. The court advised Mother that the court would consider a dismissal if Father did not contact the court within thirty days. Mother filed the motion to dismiss in May 2003, with a Notice of Hearing for June 17, 2003. The record before us does not reveal if this hearing was conducted.

Counsel entered an appearance on Father's behalf on June 18, 2003. Counsel filed the petition to reinstate visitation simultaneously with Father's response to Mother's motion to dismiss. This attorney subsequently obtained leave of court to withdraw from representing Father in March 2005. The certificate of service attached to the order granting the withdrawal reflects that Father had moved to California by this time.

(continued...)

-2-

Mother filed another petition for civil contempt on July 5, 2005, alleging that Father had once again fallen into arrears on his obligations to pay child support and a portion of the children's health insurance premiums. Among other remedies, Mother requested Father's incarceration until Father purged the contempt. The same day, Mother filed a petition to terminate Father's parental rights ("original petition"). The original petition was superseded by a September 7, 2005 filing captioned as an "Amended Petition for Termination of Parental Rights and Petition for Adoption by a Step Parent" ("amended petition"). Mother and Stepfather were jointly named as petitioners. As grounds for termination, the amended petition alleged that Father had abandoned the children by a willful failure to visit for four consecutive months prior to the filing of the original petition. Noting the prior suspension of Father's visitation rights, the amended petition further alleged that, at the time the original petition was filed, Father had not contacted the children for about two-and-a-half years and was $57,000 in arrears on child support and health insurance premiums. His visitation rights had allegedly been suspended by court order on August 16, 2002 as a result of his negligence toward the children. The amended petition also alleged that terminating Father's parental rights was in the children's best interests. In addition to the termination, the amended petition also sought court approval of Stepfather's adoption of the children.

In September 2005, Mother obtained an ex parte temporary protective order against Father after Father twice appeared at the children's school. According to the police report, the second encounter ended when Father sped away from the school grounds after Mother displayed a handgun that she was permitted to carry. A consent order reflects that the parties agreed to continue the September 23, 2005 hearing on the protective order and agreed that the protective order would remain in effect until the hearing.

The trial court conducted a hearing in the case on January 26, 2006. In response to the allegations that Father was in arrears on support payments, the trial court stated, "As soon as the facts are before this Court, we will come up with a plan that is reasonable for the [Father] to pay, and then if he doesn't pay it, he will come stay with me here in Tennessee for a while."[3] The trial court reserved its ruling on the termination of Father's rights and the stepparent adoption. Responding to a question from Father's counsel, the trial court stated that Father could telephone the children. By order dated April 13, 2006, the trial court

---

[2](...continued)
As we discuss below, the trial court globally dismissed all pending matters in its April 2007 final judgment terminating Father's parental rights and approving Stepfather's adoption of the children.

[3] At the time of the hearing, Father was still living in California.

ordered Father to provide documentation of endorsed checks reflecting disputed child support payments.[4]

On December 4, 2006, Father moved the trial court to set dates and times for Father's telephone calls with the children and to order Mother to provide Father with a current phone number to call. On January 16, 2007, Mother moved to have Father declared in willful contempt of the trial court's April 13, 2006 order. On January 19, 2007, Father moved for the modification of his child support obligations to reflect his support of his other children.

A hearing on all pending matters, including the amended petition, was scheduled for April 19, 2007. At this hearing, Father informed the trial court through counsel that he "wishe[d] to agree with that [amended] petition and allow the adoption to proceed." He was placed under oath and questioned but was not asked to add his signature to the amended petition. During his testimony, Father answered "That's true" or "That's correct" to the following questions, among others:

—Whether he had reviewed the amended petition;

—Whether he had informed counsel that he "wish[ed] to allow the termination of [his] parental rights and have [Mother] and [Stepfather] to adopt the children";

—Whether he "intend[ed] to freely and voluntarily surrender the rights to these children and allow them to be adopted"; and

—Whether the adoption would be in the best interest of "everybody," including the children, Father, his second wife, and his children from the remarriage.

Mother testified that the facts and allegations of the amended petition were true. She also testified that the termination of Father's rights and the children's adoption by Stepfather would be "in the best interest of everyone involved . . . , especially the children."

At the conclusion of the testimony, the trial judge found that "the *surrender* by the natural father is freely and voluntarily made, [and] that the stepfather is the proper person to be allowed to adopt the children. The Court hereby awards and grants the adoption" (emphasis added). With the agreement of the parties, the trial court globally dismissed all other pending matters in the case. Subsequently, on April 25, 2007, the trial court issued its "Final Judgment of Parental Rights and Adoption" ("final judgment"). The final judgment

---

[4] The record reflects that the trial court intended its order to include proof of those payments that Father was allegedly making to support children from a prior relationship.

found that "[t]he *termination* of parental rights and adoption as set forth herein is in the best interest of the children" (emphasis added). Without making factual findings as to grounds for termination or concluding that any such grounds existed, the final judgment found that Father "testified under oath in open court that he agrees to *surrender* his parental rights to the minor children . . . and that the *termination* of [Father's] parental rights and the adoption of the minor children as set forth herein are in the best interest of the children" (emphases added). The final judgment ordered that Father's parental rights "are hereby *terminated*" (emphasis added).

After agreeing in open court to the termination of his parental rights, Father litigated feverishly to undo that result. On May 16, 2007, he filed a "Petition to Vacate or Void Surrender."[5] The petition asserted that Father had not consented to the *termination* of his parental rights but had *surrendered* those rights instead. The petition specifically argued that the trial court had not complied with the procedural requirements of Tennessee's surrender statute. See Tenn. Code Ann. § 36-1-111 (2005). Furthermore, Father claimed that he had given up his parental rights under duress because Mother and Stepfather had offered to dismiss the civil contempt petition (with its prayer for Father's incarceration until Father paid the substantial amount of back child support) in exchange for his support of Stepfather's adoption. Father subsequently filed motions for the trial judge's recusal,[6] leave to conduct discovery on opposing counsel, and summary adjudication, as well as a motion in limine to determine the admissibility of Mother and Stepfather's settlement offer, see Tenn. R. Evid. 408. The parties filed cross-motions for Rule 11 sanctions, and Father then moved to quash Mother and Stepfather's request for sanctions.

The trial court set a hearing on all pending motions for November 14, 2007. Father employed new counsel shortly before the hearing and did not appear. At new counsel's request, the trial court continued the matter until December 14, 2007.[7] New counsel filed an

---

[5] The Court of Appeals treated Father's petition to vacate or void surrender as a motion to alter or amend a final judgment. See Tenn. R. Civ. P. 59.04. So construed, it was timely filed within thirty days of the trial court's final judgment. Id. The Court of Appeals appropriately treated the petition according to the relief that it sought rather than how Father captioned it. See Norton v. Everhart, 895 S.W.2d 317, 319 (Tenn. 1995).

[6] In support of his recusal motion, Father alleged that the chancellor had approved a violation of a state criminal statute and, therefore, could not be impartial or disinterested. The trial judge and Court of Appeals denied recusal. Nothing in this record reflects that the judge ever changed his mind. Despite raising the issue before this Court, Father's counsel advised at oral argument that the issue had subsequently become moot and that he no longer wished to advance that claim. Therefore, we do not address the recusal issue.

[7] The trial court ordered Father to pay attorneys' fees and expenses that Mother and Stepfather's
(continued...)

amended petition to vacate or void surrender and an amended recusal motion. In addition to the prior arguments concerning procedural error and duress, Father argued that his "surrender" of his parental rights should be vacated because he had ineffective assistance of counsel at the April 19, 2007 hearing. Father argued that his prior counsel had failed to inform Father that Mother and Stepfather could not absolve him of the obligation to pay back the child support arrearages. Thus, in exchange for giving up his parental rights, Father asserted that he essentially obtained nothing in return, as Mother and Stepfather could refile their petition for back child support and civil contempt at any time.

On December 14, 2007, the trial court conducted a hearing on the pending motions. The trial court explained that Father could offer testimony pertaining to the allegations of duress, but Father did not testify. Instead, the only evidence of duress Father introduced at the hearing was Mother and Stepfather's responses to request for admissions, in which they conceded that they had offered to dismiss all pending motions if Father consented to the termination of his parental rights and that they would have sought Father's incarceration for civil contempt for failure to pay child support if he had not consented.[8] The trial court ultimately denied Father's motions to vacate the surrender, have the trial judge recused, obtain discovery on opposing counsel, prevail on summary adjudication, and have the responses to request for admissions deemed admissible. The trial court also denied the cross-motions for sanctions.

Father's appeal followed. Despite both parties' treatment of the issues on appeal as Father's surrender of parental rights, see Tenn. Code Ann. § 36-1-111, the Court of Appeals held that the trial court had, in fact, terminated Father's parental rights, see Tenn. Code Ann. § 36-1-113 (2005 & Supp. 2009). The Court of Appeals reached this holding after reviewing the language of the original and amended petitions, the transcript of Father's testimony at the hearing on the amended petition, and the language of the trial court's final judgment. Because the trial court had terminated Father's parental rights, the Court of Appeals rejected Father's argument that the trial court erred by omitting various procedural steps specific to a surrender proceeding. The Court of Appeals further held that, where the non-moving party consents to the termination, findings of fact and conclusions of law are unnecessary. Therefore, the Court of Appeals decided that the trial court properly granted the petition to

---

[7](...continued)
counsel incurred to prepare for the November hearing, as well as Mother's lost wages for time spent attending the hearing.

[8] Mother and Stepfather's Notice of Service of these responses are in the record but not the responses themselves. Father's counsel read excerpts from the responses to the trial court at the December 14, 2007 hearing. Counsel for Mother and Stepfather argued that the content of their responses to request for admissions was an offer to compromise inadmissible under Rule 408.

terminate, even without factual findings or a conclusion as to the specific grounds for termination. Finally, the Court of Appeals affirmed the trial court's decision against Father's other challenges, rejecting his argument that he was under duress when he gave up his parental rights, and finding no abuse of discretion in the trial court's denial of Father's motions for discovery on opposing counsel and for recusal of the trial judge.

Before this Court, in addition to renewing the issues presented below, Father argues that, even if the Court of Appeals correctly determined that Father's parental rights were terminated rather than surrendered, the trial court proceeding was procedurally defective because the trial court failed to make factual findings and conclusions of law concerning the grounds for termination.

## Standard of Review

Where, as here, the trial court sits without a jury, we review findings of facts de novo upon the record accompanied by a presumption of correctness unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); In re Adoption of A.M.H., 215 S.W.3d 793, 809 (Tenn. 2007). Questions of law, including issues of statutory interpretation, are reviewed de novo with no presumption of correctness. Adoption of A.M.H., 215 S.W.3d at 809; Kirkpatrick v. O'Neal, 197 S.W.3d 674, 678 (Tenn. 2006). Our role in statutory interpretation is to determine and implement the legislature's intent. State v. Wilson, 132 S.W.3d 340, 341 (Tenn. 2004). Whenever possible, we determine legislative intent from the natural, ordinary meaning of the statutory language, and, "[w]hen the statutory language is clear and unambiguous, we must apply its plain meaning in its normal and accepted use[.]" Eastman Chem. Co. v. Johnson, 151 S.W.3d 503, 507 (Tenn. 2004).

## Analysis

*The Nature of the Proceeding: Surrender or Termination*

Since initiating his efforts to overturn the trial court's April 25, 2007 order terminating his parental rights and allowing adoption of his children by their stepfather, Father has characterized the (allegedly erroneous) action of the trial court as a surrender of Father's parental rights rather than a termination. Father asserts that the court did not follow proper statutory procedures in accepting his surrender, thereby invalidating it. A review of the statutory requirements confirms that, if a surrender was attempted, his assertion is correct.

Tennessee law provides a mechanism for parents to surrender parental rights voluntarily under certain circumstances. See Tenn. Code Ann. § 36-1-111. Although the proceeding is judicial, it occurs privately in the chambers of a judge, id. § 36-1-111(b), and

-7-

does not require a finding on the part of the judge that the parent had neglected, mistreated, or in any way failed to parent the child appropriately.

Tennessee law anticipates, however, that the surrender of parental rights is made in favor of a specific other person or entity who must (or will soon) have physical custody of the child, see id. § 36-1-111(d)(6), and that the child will be made available for adoption, see id. § 36-1-102(47) (2005 & Supp. 2009). Until the child is actually adopted, and if the child remains in the custody of the State, parents obligated to pay child support must continue to pay that support even after the voluntary surrender of parental rights. Tenn. Code Ann. § 36-1-111(r)(1)(A); State ex rel. C.V. v. Visser, No. M2006-01229-COA-R3-JV, 2007 WL 1462235, at *6 (Tenn. Ct. App. May 18, 2007). Courts frown upon the voluntary surrender of parental rights if such surrender means that the child loses the right to receive support. See C.J.H. v. A.K.G., No. M2001-01234-COA-R3-JV, 2002 WL 1827660, at *4 (Tenn. Ct. App. Aug. 9, 2002).

Tennessee Code Annotated section 36-1-111 also provides for specific steps that must take place to render the surrender valid. The surrendering parent must execute a written surrender on a prescribed form. Id. §§ 36-1-111(e), (k)(1)(A) & (B)(i). A home study must be available to the court. Id. § 36-1-111(a)(2). The surrendering parent must communicate under oath whether the parent desires to receive legal and/or social counseling and, if requested, have actually received such counseling before the surrender is valid. Id. §§ 36-1-111(d)(4) & (k)(2)(E)-(F). The court must verify under oath the averments of the sworn surrender. Id. § 36-1-111(k)(1)(B)(i). The court must also ascertain whether the child is of Native American heritage and/or the tribe or organization of which the child is a member; whether the child will be sent out of state for the purposes of adoption; whether the person has paid or received or been promised anything of value; whether the person is freely and voluntarily executing the surrender or parental consent; and whether the child has any real or personal property or any expectation of receipt of real or personal property and the nature of that interest. Id. § 36-1-111(k)(2)(B)-(D), (G)-(H). A statement also must be provided concerning who has custody of the child. Id. § 36-1-111(k)(2)(I). However, if a court fails to follow these specific requirements exactly, an appellate court may still review the proceeding and determine that, in its entirety, a substantial compliance with the requirements has been obtained. In re Adoption of Hatcher, 16 S.W.3d 792, 797 (Tenn. Ct. App. 1999).

In the instant case virtually none of the requirements necessary for a lawful surrender of an individual's parental rights is found in the record. Father never filed a petition to surrender his rights; he never executed the required statutory form; his appearance to discuss the matter was conducted in open court rather than in chambers; and his colloquy with the judge, though conducted under oath, contained only a few of the several required questions incident to a surrender. No home study was ever conducted, and Father was not advised that

he had ten days in which to revoke his surrender, see Tenn. Code Ann. § 36-1-112(a)(1)(A) (2005). Although both Father's attorney and the trial court used the word "surrender" at least once during the hearing on the amended petition, in no other way does the record of the proceedings reflect any attempt to denominate Father's tender of his rights as a surrender or to follow the statutory procedures. Thus, we conclude that a surrender of Father's parental rights, as defined by statute, was neither attempted nor accomplished in this case.

However, this does not end our inquiry about the efficacy of the proceeding. The pleading giving rise to this appeal was originally filed by Mother alone as a "Petition for Termination of Parental Rights." An "Amended Petition for Termination of Parental Rights and Petition for Adoption by a Step Parent" was later filed by Mother and Stepfather jointly.[9] As the source of the chancery court's jurisdiction, the amended petition cited a provision from the termination statute, Tennessee Code Annotated section 36-1-113(a).[10] The contents of the amended petition fulfilled the requirements of a termination petition as set forth in section 36-1-113(d)(2)-(3).[11] The amended petition asserts four facts in support of terminating Father's parental rights: abandonment by willful failure to visit for four months; lack of any contact for two and one-half years; negligence resulting in an order suspending Father's visitation rights; and arrearage of $57,000 in child support. The amended petition asserts that termination is in the children's best interests. The amended petition neither uses the word "surrender" nor cites the surrender statute. Finally, the amended petition requests that Stepfather be allowed to adopt the children.

---

[9] Because the amended petition completely superseded the original petition and added a request for adoption, there is no need to consider any matters raised in the original petition. For convenience, therefore, we will refer only to the amended petition.

[10] This subsection states, "[t]he chancery and circuit courts shall have concurrent jurisdiction with the juvenile court to terminate parental or guardianship rights to a child in a separate proceeding, or as a part of the adoption proceeding . . . ." The amended petition also cited Tennessee Code Annotated section 16-11-110 (2009), which vests concurrent jurisdiction in the circuit and chancery courts over divorce and adoption proceedings.

[11] Subsection (d)(2) requires that the petition contain the children's birth names, dates of birth, current residence, basis for termination, and jurisdictional allegations. Subsection (d)(3)(A) requires a verified statement that the putative father registry was consulted within ten working days of filing the petition, whether other potential claims to the child's paternity exist, and whether any other parental or guardianship rights must be terminated prior to adoption. Subsection (d)(3)(B) contains notice provisions. Subsection (d)(3)(C) requires the petition to state that termination will sever the rights, responsibilities, and obligations between parent and child; that the child will be placed in the guardianship of others who shall have the right to adopt the child; and that the parent shall have no further right to receive notice of adoption proceedings, object to adoption, or have a relationship with the child.

At the April 19, 2007 hearing, in response to questions posed by his counsel, Father testified that he had reviewed "the Amended Petition for Termination of Parental Rights and Adoption" and agreed that he "wish[ed] to allow the termination of [his] parental rights." He also agreed that he "inten[ded] to freely and voluntarily surrender the rights to these children." The trial court orally found that "the surrender by the natural father is freely and voluntarily made."

The trial court captioned its written order as a "Final Judgment of Termination of Parental Rights and Adoption." The order acknowledged the prior hearing on the "Amended Petition for Termination of Parental Rights and Adoption by a Stepparent." The language of the final judgment repeatedly refers to the proceeding as a termination:

—"This judgment reflecting the termination of parental rights . . . shall be filed in the court record."

—"The termination of parental rights . . . is in the best interest of the children."

—"The parental rights of [Father] are hereby terminated . . . ."

In describing Father's testimony, the trial court uses the word "surrender," but the same finding subsequently refers to Father's loss of parental rights as a "termination": "[Father] testified under oath in open court that he agrees to surrender his parental rights to the minor children . . . and that the termination of [Father's] parental rights . . . [is] in the best interest of the children."

From our review of the record, we agree with the Court of Appeals that Mother and Stepfather attempted to obtain termination, rather than surrender, of Father's parental rights in the trial court. The language of the amended petition expressly sought termination and was tailored to satisfy the requirements of the termination statute, not the surrender statute. Father's last-minute attempt to agree to the adoption certainly caused some confusion. Father's counsel asked Father if the children were Native American, a question more appropriate to a surrender. Although Father's attorney and the trial court used the word "surrender" during the hearing, the transcript reflects that counsel for both sides also referred to the underlying filing as a petition for termination. However, other than one isolated reference to "surrender," the trial court's final judgment consistently describes the proceedings as a termination, and few steps necessary to a surrender were included. We conclude that the Court of Appeals correctly characterized the trial court proceedings, even after Father indicated his consent, as a termination of parental rights.

In the alternative Father argues that the trial court's actions were also insufficient to terminate his parental rights because the court did not make the findings required by that statute. We next consider those assertions.

Proceedings to terminate parental rights are involuntary in nature and therefore implicate federal and state constitutional concerns. "Few consequences of judicial action are so grave as the severance of natural family ties." M.L.B. v. S.L.J., 519 U.S. 102, 119 (1996) (internal quotation omitted). Ultimately, the order terminating parental rights has "the effect of severing forever all legal rights and obligations" between parent and child. Tenn. Code Ann. § 36-1-113(*l*)(1). The United States Supreme Court has recognized that "freedom of personal choice in matters of family life is a fundamental liberty interest protected by the Fourteenth Amendment." Santosky v. Kramer, 455 U.S. 745, 753 (1982). Indeed, "the interest of parents in the care, custody, and control of their children [] is perhaps the oldest of the fundamental liberty interests recognized" by that Court. Troxel v. Granville, 530 U.S. 57, 65 (2000). The Tennessee Constitution also gives parents a right of privacy to care for their children without unwarranted state intervention unless there is a substantial danger of harm to the child.[12] In re Swanson, 2 S.W.3d 180, 187 (Tenn. 1999) (citing Hawk v. Hawk, 855 S.W.2d 573, 579 (Tenn. 1993)). While fundamental, this right is not absolute, and a parent may forfeit that right by abandoning or otherwise engaging in conduct that substantially harms the child. Blair v. Badenhope, 77 S.W.3d 137, 141 (Tenn. 2002); In re J.C.D., 254 S.W.3d 432, 437 (Tenn. Ct. App. 2007).

Termination proceedings in Tennessee are also governed by statute. Osborn v. Marr, 127 S.W.3d 737, 739 (Tenn. 2004). Pursuant to section 36-1-113(c):

(c) Termination of parental or guardianship rights must be based upon:

(1) A finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established; and
(2) That termination of the parent's or guardian's rights is in the best interests of the child.

_____

[12] This right is grounded in article I, section 8 of our state's constitution, which reads "That no man shall be taken or imprisoned, or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner destroyed or deprived of his life, liberty or property, but by the judgment of his peers or the law of the land." Tenn. Const. art. I, § 8.

The party petitioning for termination carries the burden of making both of these showings. In re M.J.B., 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004); In re S.M., 149 S.W.3d 632, 639 (Tenn. Ct. App. 2004). These requirements ensure that each parent receives the constitutionally required "individualized determination that a parent is either unfit or will cause substantial harm to his or her child before the fundamental right to the care and custody of the child can be taken away." Swanson, 2 S.W.3d at 188. We have previously determined that the "clear and convincing evidence" standard applies to both the determination that grounds for termination exist and the conclusion that termination is in the child's best interests. In re F.R.R., III, 193 S.W.3d 528, 530 (Tenn. 2006); In re Valentine, 79 S.W.3d 539, 546 (Tenn. 2002). Therefore, our statute comports with the Supreme Court's holding that due process requires clear and convincing evidence of the allegations in order to terminate parental rights. Santosky, 455 U.S. at 747-48.

Our statute sets forth the available grounds for termination of parental rights.[13] See Tenn. Code Ann. § 36-1-113(g); Jones v. Garrett, 92 S.W.3d 835, 838 (Tenn. 2002). The petitioner need only establish the existence of one of those statutory grounds to support a termination. Valentine, 79 S.W.3d at 546. If the petitioner establishes grounds for termination, only then does the court determine whether termination is in the best interests of the child. In re Marr, 194 S.W.3d 490, 498 (Tenn. Ct. App. 2005); White v. Moody, 171 S.W.3d 187, 192 (Tenn. Ct. App. 2004). The statute enumerates factors for the best interests analysis that the court "shall consider," but, as opposed to the inquiry into grounds for termination, the best interests analysis "is not limited to" the factors enumerated in the statute. Tenn. Code Ann. § 36-1-113(i); see In re Audrey S., 182 S.W.3d 838, 878 (Tenn. Ct. App. 2005).

In addition to setting forth the bases for termination of parental rights, the statute also requires trial courts to "enter an order that makes specific findings of fact and conclusions of law" no later than thirty days after the termination hearing. Tenn. Code Ann. § 36-1-113(k). We have previously stated that, "given the importance of establishing the permanent placement of a child who is the subject of a termination of parental rights proceeding, the trial court should include in its final order findings of fact and conclusions of law with regard

---

[13] In this case, Mother and Stepfather's petition alleged abandonment as grounds for termination. See Tenn. Code Ann. § 36-1-113(g)(1). The statutory definition of "abandonment" includes the willful failure to visit or support in the four consecutive months immediately prior to the filing of a pleading to terminate. See id. § 36-1-102(1)(A)(i). Here, the amended petition alleged that Father had willfully failed to visit the children for four months immediately prior to the filing of the original petition. Indeed the petition alleged that Father had not even contacted the children for approximately two-and-a-half years, his visitation rights having been suspended on August 16, 2002 as a result of his negligence with the children. In addition, the amended petition alleged that Father was $57,000 in arrears in child support and health insurance payments when the original petition was filed.

to each ground presented." In re D.L.B., 118 S.W.3d 360, 367 (Tenn. 2003). The required findings "facilitate appellate review and promote just and speedy resolution of appeals." Audrey S., 182 S.W.3d at 861. Our Court of Appeals has repeatedly directed trial courts to issue written orders with the requisite findings and conclusions on all grounds "whether they have been requested to do so or not."[14] E.g., In re Tiffany B., 228 S.W.3d 148, 156 (Tenn. Ct. App. 2007); In re Giorgianna H., 205 S.W.3d 508, 516 (Tenn. Ct. App. 2006).

The Court of Appeals, therefore, has routinely remanded contested termination cases to the trial court for failure to make findings of fact and/or conclusions of law, whether related to the grounds for termination or the child's best interests. See, e.g., In re Adoption of Muir, No. M2002-02963-COA-R3-CV, 2003 WL 22794524, at *3 (Tenn. Ct. App. Nov. 25, 2003) (remanding because trial court omitted factual findings underlying conclusion that grounds for termination did not exist); In re C.R.B., No. M2003-00345-COA-R3-JV, 2003 WL 22680911, at *4 (Tenn. Ct. App. Nov. 13, 2003) (remanding due to lack of factual findings to support grounds for termination and failure to state that termination was in the children's best interests); see also Jones, 92 S.W.3d at 839 n.4 (agreeing with Court of Appeals that trial court erred by failing to make a best interests determination). But see White, 171 S.W.3d at 192 (declining to vacate trial court's judgment for inadequate best-interest findings because case had already been remanded twice, thus prolonging the litigation by three years).

This case is complicated by the fact that what began as a hotly contested petition to terminate parental rights apparently lost its contested nature on the day scheduled for the final hearing when Father, through counsel, surprisingly announced in open court that "he wishe[d] to agree with that petition and allow the adoption to proceed." Father was then placed under oath and questioned by his attorney about his position. As indicated earlier, he answered "that's correct" to the question, "And is it your intention to freely and voluntarily surrender the rights to these children and allow them to be adopted by [Mother] and her husband, [Stepfather]?" He further answered that he believed the surrender and adoption were in "everybody's best interest . . . ." He was not, however, asked about the truth of the fault allegations made against him in the amended petition. Thus, he neither admitted nor denied those allegations. Mother also testified and swore under oath that "all of the information and allegations in th[e] [amended] petition [were] true to the best of [her]

_____

[14] Consistent with the same policies—that is, the importance of permanently placing children and the just, speedy resolution of cases—the Court of Appeals should likewise review the trial court's findings of fact and conclusions of law as to each ground for termination, even though the statute only requires the finding of one ground to justify terminating parental rights. See In re Giorgianna H., 205 S.W.3d 508, 517 (Tenn. Ct. App. 2006) (citing In re D.L.B., 118 S.W.3d 360, 367 (Tenn. 2003)). The Court of Appeals' thorough review of all grounds decided by the trial court will prevent unnecessary remands of cases that we hear in this Court.

information, knowledge, and belief." She was not asked about individual allegations. No other testimony concerning the alleged grounds was solicited or given.

The only oral finding made by the trial court was: "The court finds the surrender by the natural father is freely and voluntarily made, that the stepfather is the proper person to be allowed to adopt the children. The court hereby awards and grants the adoption. Prepare your order to that effect." The court also found that the children's names should be changed and that all other matters pending before the court were to be dismissed.

The final judgment in this matter was entered on April 25, 2007. Although the court made findings about other facts before it, including that "[t]ermination of all parental or guardian rights to the children by court order or parental consents which are necessary to proceed with the adoption have occurred," the court made no specific findings that any ground for termination had been proven. The court further found that "[t]he termination of parental rights and adoption as set forth herein is in the best interest of the children" and that Father had agreed with that proposition, but made no further findings.

Since the trial court was silent concerning the grounds for termination or factual findings that would establish the existence of any such grounds, we must determine whether Father's consent to the termination of his parental rights absolved the trial court of the obligation to make findings of fact and conclusions of law concerning the grounds. In holding that the trial court was not required to make these written findings and conclusions, the Court of Appeals cited Rainey v. Head, No. W2000-00504-COA-R3-CV, 2001 WL 277984, at *2-3 (Tenn. Ct. App. Mar. 20, 2001). Rainey involved a father of a child born out of wedlock who was indicted for aggravated burglary and multiple aggravated assaults with a handgun. The victims of his alleged crimes included the mother of his child, as well as the mother's mother and stepfather ("family"). The mother filed a petition to terminate the father's parental rights. The father, represented by counsel, ultimately joined with the mother and signed a consent order terminating his parental rights. Just under one year later, the father changed his mind and filed a Petition to Vacate Order Terminating Parental Rights, claiming duress and undue influence and alleging that the family offered not to oppose a prosecutorial grant of diversion of the criminal charges if the father agreed to terminate his parental rights. Id. Distinguishing the typical case where a non-moving parent or guardian opposes the termination of parental rights, the Court of Appeals rejected the father's argument that the trial court lacked jurisdiction to terminate his rights for failure to make the section 36-1-113(c) findings and conclusions:

> [the father] entered into a consent order agreeing to terminate his parental rights. It was thus unnecessary for the trial court to make findings of fact and conclusions of law as to whether [the father's] parental rights should be

-14-

terminated. . . . Because it was unnecessary for the trial court to make findings of fact and conclusions of law pursuant to section 36-1-113(c), we find [father's] argument to be meritless.

Id. at *3. Neither the parties nor the Court of Appeals apparently addressed the fact that, in the absence of an intention to seek a stepparent adoption, the mother did not have standing to file such a petition. See Tenn. Code Ann. § 36-1-113(b).

Similarly, in C.J.H. v. A.K.G., the father was never married to the mother and had never visited the child, although he had paid court-ordered child support. 2002 WL 1827660, at *1. Both parents filed a joint petition to terminate the father's rights without planning a subsequent adoption. At the hearing, the mother did not specifically testify about the grounds for termination or the child's best interests. The trial court denied the mother and father's joint petition to terminate parental rights because the termination was not shown to be in the best interests of the child. The parents appealed the order denying the petition. The Court of Appeals analyzed the significance of the father's obligation to support the child and reviewed the facts of cases from other jurisdictions where courts rejected voluntary termination of parental rights as a way to circumvent the support obligation. Regarding the father's non-opposition to the petition to terminate, the Court of Appeals reasoned:

parents cannot agree to terminate parental rights if such termination is not in the best interest of the child. An action to terminate parental rights in this situation is subject to the same statutory requirements as one that is opposed: proof by clear and convincing evidence that grounds exist and that the child's best interests are served by the termination. It is the duty of the courts to examine the entire set of circumstances and make those determinations.

Id. at *8 (footnote omitted). The court also stated, "although our statutes allow, in some circumstances, for a voluntary surrender of parental rights, and its concomitant duty to support, those circumstances appear to be present only in the context of an adoption." Id. at *7. Thus, the court found that the father was not entitled to use any of the statutory procedures for relinquishment of parental rights on the facts of that case. Relevant to the case at hand, the court finally noted that an unopposed action to terminate parental rights is subject to the same proof requirements as one that is opposed: clear and convincing evidence that grounds exist and that the child's best interests are served by the termination. Acknowledging that Rainey held to the contrary, the C.J.H. court stated, "[w]e simply disagree."[15] Id. at *8 n.6. So do we.

---

[15] The Court of Appeals then cited Castleman v. Castleman, No. M2000-00270-COA-R3-CV, 2000

(continued...)

The termination statute clearly and unequivocally requires the trial court to make the statutorily required findings and conclusions before granting a petition to terminate parental rights, regardless of whether that petition is opposed. Tenn. Code Ann. § 36-1-113. In two places, subsections (c) and (k), the statute uses mandatory language to describe the trial court's responsibility to make findings of fact and conclusions of law before terminating parental rights. Those subsections do not distinguish between contested and uncontested termination proceedings. We must adhere to the statute's plain language. Otherwise, we risk infringing on parents' fundamental right to the care and custody of their children, which we deny through the termination of parental rights "only upon a determination of [a] parent's unfitness to be a parent." In re D.A.H., 142 S.W.3d 267, 274 (Tenn. 2004). Explicitly reaching those determinations by clear and convincing evidence is also necessary to protect a parent's due process rights. See Santosky, 455 U.S. at 747-48. Because Rainey makes optional the requirements of the statute and potentially runs afoul of federal and state constitutional protections, we reject its reasoning that the trial court need not always make the written findings and conclusions of sections 36-1-113(c) and (k) before terminating parental rights.

Mother and Stepfather argue that, even if we disavow Rainey and adopt the interpretation of the termination statute set forth in C.J.H., we should still affirm the Court of Appeals. They specifically argue that the driving concern of the C.J.H. court—seeking to avoid depriving a child of a parent—does not exist in this case because Stepfather's adoption of the children immediately followed the termination of Father's rights. Mother and Stepfather support their reading of C.J.H. by citing several excerpts where the Court of Appeals discussed the parent's obligation to pay child support as it related to the best interests of the child. The problem with Mother and Stepfather's argument is that it leapfrogs to the best interests analysis without addressing the trial court's fatal omission of findings and conclusions relative to the grounds for termination. The best interests analysis is separate from and subsequent to the determination that there is clear and convincing evidence

---

[15](...continued)
WL 1862836 (Tenn. Ct. App. Dec. 21, 2000), which involved a mother's motion to set aside a default judgment awarding a divorce to the father, granting him custody of their daughter, and distributing marital property. In granting a default judgment, the trial court "heard no evidence, considered no facts, and made no findings of fact." Id. at *3. Much like the termination of parental rights, the custody determination involves the consideration of statutorily enumerated factors and requires an individualized, fact-intensive decision. Given the absence of evidence or factual findings, the Court of Appeals held, "the trial court's award of custody by default was outside the range of alternatives available to the court and not within its discretion." Id. Accordingly, the Court of Appeals reversed the trial court's denial of the mother's motion to set aside the default and remanded for a trial on the merits. Id. at *4.

of grounds for termination.[16] In re Marr, 194 S.W.3d at 498; see In re C.B.W., No. M2005-01817-COA-R3-PT, 2006 WL 1749534, at *6 (Tenn. Ct. App. June 26, 2006) ("existence of a ground does not inexorably lead to the conclusion that termination of a parent's rights is in the best interest of the child"). Here, because the trial court failed to make the findings and conclusions relative to grounds for termination, we are unable to reach the trial court's determination that termination of Father's parental rights was in the children's best interests. See D.L.B., 118 S.W.3d at 368.

Having determined that the required findings regarding grounds for termination were not made in this case, we are constrained to remand it to the trial court for further expedited proceedings. We may not conduct de novo review of the termination decision in the absence of such findings. See Adoption Place, Inc. v. Doe, 273 S.W.3d 142, 151 & n.15 (Tenn. Ct. App. 2007). In fact, even if the law allowed such review, we could not conduct it here because of the gaps in this record, which basically consists of the allegations in the amended petition and Mother's generalized testimony that the facts and allegations of the amended petition were true to her knowledge.

We are mindful of the consequences of our decision for the parties. Remanding this case to the trial court will prolong the uncertainty for both the children and their parents. We do not relish the thought of causing further discord for this family. The requirements of the termination statute, however, and the constitutional implications involved in the termination of "perhaps the oldest of the fundamental liberty interests," Troxel, 530 U.S. at 65, leave us no other choice.

---

[16] At the point where Father asserted his willingness to allow the adoption to proceed, the parties could have circumvented the termination statute's requirement for the trial court to make factual findings and conclusions of law if they had simply taken steps to convert the proceeding from a termination to a stepparent adoption. Specifically, pursuant to Tennessee Code Annotated section 36-1-117(f) (2005 & Supp. 2009):

> [w]hen the child is related to one (1) of the petitioners or is the stepchild of the petitioner, and the legal or biological parent(s) or guardian(s) signs the adoption petition as a co-petitioner for the specific purpose, as stated in the petition, of giving consent to the adoption, no further surrender, parental consent, or termination of parental rights shall be required as to that parent or guardian, as the act of joining in the adoption petition shall be deemed a complete surrender, . . . and no further notice or service of process need be made to that person[.]

However, the amended petition neither contains Father's signature nor states Father's consent to the adoption, and no one addressed this statute during Father's sworn testimony. Additionally, counsel for Mother and Stepfather confirmed during oral argument that they did not attempt to avail themselves of section 36-1-117(f). Thus, we cannot consider whether the requirements of this statute were substantially met during the hearing.

On remand the trial court must develop an evidentiary record, ultimately resulting in a written order with findings of fact and conclusions of law as to whether clear and convincing evidence establishes the existence of each of the grounds asserted for terminating Father's rights. Should the trial court conclude that clear and convincing evidence of ground(s) for termination does exist, then the trial court must also make a written finding whether clear and convincing evidence establishes that termination of Father's rights is in the children's best interests. If the trial court's conclusion about the children's best interests is based on additional factual findings besides the ones made in conjunction with the grounds for termination, the trial court must also include these findings in the written order. We further direct the trial court to expedite the disposition of the case on remand, consistent with Tennessee Code Annotated section 36-1-124(a) (2005). See State Dep't of Children's Servs. v. F.R.G., No. E2006-01614-COA-R3-PT, 2007 WL 494996, at *12 (Tenn. Ct. App. Feb. 16, 2007) ("[a] prompt and expedited conclusion to termination proceedings is essential to the child's welfare").

*Other Matters*

Our resolution of the case pretermits Father's appeal of the Court of Appeals' rulings on certain other matters. Because the trial court must conduct a new hearing on the amended petition upon remand, Father's argument of duress during his consent to the termination is now moot. Father's challenges to the denial of the evidentiary motions that he filed in conjunction with his duress claim are likewise moot.[17]

Conclusion

In summary, in a termination of parental rights proceeding, even when the non-moving parent consents to the termination, the trial court must make written findings of fact and conclusions of law supported by clear and convincing evidence as required by Tennessee

---

[17] Mother argued before the Court of Appeals that the trial court abused its discretion when it denied Mother's July 9, 2007 Motion for Sanctions. However, Mother did not raise that issue before this Court. Therefore, the judgment of the Court of Appeals on that issue is affirmed.

On a separate note, because the parties have not raised the issue to this Court, we decline to address whether the appointment of a guardian ad litem for the children, which the trial court failed to do in this case, is required in a contested termination proceeding. See Tenn. Sup. Ct. R. 13 § 1(d)(2)(D). We note that our Court of Appeals has held that our rule "'is mandatory even if no one requests that a guardian ad litem be appointed.'" In re Adoption of Gracie M.M., No. M2009-01609-COA-R3-PT, 2010 WL 22814, at *1 (Tenn. Ct. App. Jan. 5, 2010) (quoting In re A.D.C., No. E2006-00771-COA-R3-PT, 2007 WL 667882, at *1 (Mar. 7, 2007)).

Code Annotated sections 36-1-113(c) and (k), just as the trial court would do in a contested proceeding. Here, the Court of Appeals correctly determined that the trial court proceedings sought to effect a termination, rather than surrender, of Father's parental rights but erred in deciding that findings and conclusions as to the grounds for termination were unnecessary. Therefore, we reverse the judgment of the Court of Appeals and remand the case to the trial court for an expedited hearing on the amended petition and the preparation of a written order that fully complies with sections 36-1-113(c) and (k).

The costs in this case are taxed one-half (½) to Father and his surety and one-half (½) to Mother and Stepfather, for which execution may issue if necessary.

_____
CORNELIA A. CLARK, JUSTICE