IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 26, 2013

## IN RE: TRINITY M. H.

**Appeal from the Chancery Court for Marshall County**
**No. 16185     J. B. Cox, Judge**

**No. M2013-00810-COA-R3-PT - Filed December 5, 2013**

Grandparents were awarded custody of Child after a dependency and neglect finding. Grandparents later filed petition to terminate Mother's parental rights and to adopt Child. The trial court terminated Mother's rights after concluding Mother abandoned Child and that it was in Child's best interest for Mother's rights to be terminated.  The evidence supports the trial court's finding by clear and convincing evidence that Mother abandoned Child by failing to visit her in the four months leading up to Grandparents' petition, but the evidence is not clear and convincing that it is in Child's best interest that Mother's rights be terminated.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed**

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and ANDY D. BENNETT, JJ., joined.

William M. Haywood, Lewisburg, Tennessee, for the appellant, S.B.H.

Megan A. Kingree, Shelbyville, Tennessee, for the appellees, S.J.F. and P.J.C.F.

## OPINION

S.J.F. and P.J.C.F. ("Grandparents") are the paternal grandparents of Trinity M.H., who was five years old at the time of trial.  Grandparents filed an action seeking to terminate the parental rights of their son, J.J.H. ("Father"), and of Trinity's mother, S.B.H. ("Mother"), so that Grandparents could adopt Trinity.  Prior to the end of the trial, J.J.H. surrendered his parental rights to Trinity, and the case proceeded against Mother alone.  Following a one-day trial, the trial court terminated the parental rights of Mother to Trinity.  Mother appeals.

# I. FACTUAL BACKGROUND

Trinity was born to S.B.H. ("Mother") and J.J.H. ("Father") in July 2007. Grandparents were awarded temporary custody of Trinity in January 2010 when Mother and Father were arrested following a domestic dispute. Father later filed for divorce, and during a *pendente lite* hearing in December 2010, Grandparents were again awarded temporary custody. Mother and Father were divorced in April 2011, and Father was named the primary residential parent. Mother did not appear in court when the divorce was granted, and she was not awarded any visitation with Trinity. Income was imputed to Mother, and she was ordered to pay child support to Father in the amount of $263 per month.

Grandparents filed a dependency and neglect action against Mother and Father in August 2011. Following a hearing in October, the trial court found Trinity dependent and neglected and awarded Grandparents custody of Trinity. Grandparents filed a Petition for Adoption and Termination of Parental Rights on January 31, 2012.

A trial took place on November 8, 2012, during which the parties and one of Mother's sons testified. The evidence revealed that Mother had experienced trouble with drugs and alcohol when Trinity was younger and around the time of her divorce from Father. Mother was arrested in June 2010 for theft and was put on probation and ordered to pay a fine. Mother testified that during that time she was homeless and did not have the money to pay the fine. Mother testified she was unable to get a job due to her criminal record. She had two sons in addition to Trinity, both of whom were older than Trinity. She arranged for her older son to live with her mother in Florida for a year, and her younger son was placed in foster care.

Mother moved to Indiana to live with her boyfriend's family in January 2011. She and her boyfriend moved to Kentucky in May 2011, and they moved into a house in June. A warrant for Mother's arrest was issued in Tennessee in June 2011 based on Mother's violation of her probation. Mother explained that she was still unable to pay her fine, and she did not report in person to her probation officer in Tennessee for fear of being incarcerated.[1]

Mother was questioned about whether she visited Trinity in the four months preceding Grandparents' petition to terminate her rights. Mother testified that she wanted to visit Trinity and that she telephoned Grandparents several times over that period to find out how her daughter was doing and to speak with Trinity. Mother explained that by October 2011,

---

[1]Mother did, however, let her probation officer know where she was living and that she would report to her when she was able to pay her fine.

both of her older boys were living with her again. She feared she would be arrested and put in jail for her probation violation if she went down to Tennessee to visit Trinity. Mother also explained that she did not have a reliable vehicle at that time. Mother asked P.J.C.F., Trinity's grandmother, to meet her at the Kentucky border so Mother could see Trinity, but P.J.C.F. refused. Mother believed Grandparents were taking good care of Trinity, and she was concerned that if she were incarcerated in Tennessee, there would be no one to take care of her older boys.

Mother was also asked whether she sent Grandparents any money to help support Trinity in the four months preceding Grandparents' petition to terminate her rights. Mother testified that she had offered to send some money down, but that Trinity's grandmother responded that "they were fine." Mother testified that she sent two packages down for Trinity that included clothes, toys, and shoes. One package was sent to Grandparents' house in October, and Grandparents acknowledged receiving this package. Mother testified she sent a second package at Christmas time to the address where she thought Father resided, but that package was returned.

With regard to Mother's prior drug and alcohol problems, Mother testified that she did not drink alcohol anymore and had not consumed any since 2010. Mother also testified that she did not abuse drugs anymore. Mother admitted to smoking marijuana one time three months previously, but she said that had been a mistake and she had no plans to smoke marijuana again. Mother explained she had a prescription for Lortab due to surgery she had recently undergone. She testified, however, that she was not addicted to any drugs.[2] No countervailing evidence was offered to contradict her testimony.

## II. Trial Court's Order

Following the trial, the court granted Grandparents' petition to terminate Mother's parental rights and to adopt Trinity.[3] The grounds for termination that the court relied on included abandonment and persistence of conditions. The court first found Grandparents proved by clear and convincing evidence that, during the four months immediately preceding the filing of their petition, Mother had abandoned Trinity by willfully failing to visit and willfully failing to support or make reasonable payments towards the support of Trinity. *See* Tenn. Code Ann. §§ 36-1-102(1)(A) and 36-1-113(g)(1).

---

[2] Mother's fifteen year old son Austin testified on behalf of Mother. Austin confirmed that Mother had stopped drinking alcohol. Austin also confirmed that, as far as he knew, Mother did not take any drugs other than over the counter pain killers, and she no longer smoked marijuana.

[3] Father surrendered his parental rights to Trinity at the end of the trial.

With regard to visitation, the court wrote, "[Mother]'s telephonic contact is at best 'token visitation' as defined by statute and certainly does not meet the requirement for visitation as defined." With regard to support, the court explained:

The Court relies on the proof and evidence of the Final Decree of Divorce in which the mother was ordered to pay child support to the father. The Court fails to find credible the mother's explanation that her support obligation was forgiven by the father and the [Grandparents]. As the mother has previously been convicted of theft, a crime of dishonesty, the Court gives no weight to her testimony. Further, any "gifts" sent by the mother to the minor child are deemed as best to be "token support" by the mother.

The trial court next found that Grandparents proved by clear and convincing evidence the persistence of conditions that led to Trinity's removal from Mother's home, as set forth in Tenn. Code Ann. § 36-1-113(g)(3). The court wrote:

The Court finds that the minor child was found to be dependent and neglected and removed from the home of the mother and father . . . . The parents were "both using dope and alcohol," and in the words of the mother "all that crazy stuff going on in Petersburg," which caused the initial removal of the minor child from the parents.

This included multiple arrests of the mother and the step-father . . . . Further, the mother reluctantly admitted that she used illegal drugs and abused prescription medication including her current use of "Lortab" or "Hydrocodone." Her illegal drug use by her own admission is within the "last three months," even taking Lortab the day of this hearing as she drove her two (2) minor sons to Court from Kentucky.

The court referred to a photograph of Mother's youngest child propped up in a chair in front of the television as evidence that Mother had not changed her parenting techniques:

[T]he lack of socialization of the minor child at issue is directly linked to the mother's actions and parenting similar to the actions depicted in the photographs. These actions by the mother created a direct link to the minor child's developmental delays. The persistence of these conditions has not been remedied by the mother, and this ground is clearly and convincingly made out.

The trial court then turned to the consideration of whether terminating Mother's parental rights would be in Trinity's best interest. The court considered each of the

-4-

applicable factors set forth in Tenn. Code Ann. § 36-1-113(I) and concluded that "the grounds for termination are clear and convincing and in favor of termination and it is in the best interest of the minor child that the rights of [Mother] be terminated." Among other reasons, the court articulated the following factors that contributed to its decision:

• Mother has chosen her sons over her daughter;

• Mother is still addicted to drugs;

• Based on the testimony of a speech pathologist, removing Trinity from her current environment into Mother's house in Kentucky would be detrimental to the child;

• Mother has not accessed social service agencies;

• Trinity does not know Mother and does not understand Mother's role in her life;

• Removing Trinity from Grandparents' home would be emotionally upsetting;

• The drugs and alcohol in Mother's home are not as bad as they once were, but they are still bad and undesirable for Trinity; and

• Mother's inconsistent employment history, inconsistent educational history, and her history with her current husband.

Mother appeals the trial court's termination of her parental rights to Trinity. She argues the evidence was insufficient to support the court's determination that Grandparents proved by clear and convincing evidence that (1) grounds existed to terminate her rights or that (2) terminating her rights to Trinity is in the child's best interest.

### III. STANDARD OF REVIEW

This appeal involves one of the most serious decisions courts make. "Few consequences of judicial action are so grave as the severance of natural family ties." *M.L.B. v. S.L.J.*, 519 U.S. 102, 119 (1996) (quoting *Santosky v. Kramer*, 455 U.S. 745, 787 (1982)). Terminating parental rights has the legal effect of reducing the parent to the role of a complete stranger, and of "severing forever all legal rights and obligations of the parent or guardian." Tenn. Code Ann. § 36-1-113(*l*)(1).

A parent has a fundamental right, based in both the federal and state constitutions, to the care, custody and control of his or her own child. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *In re Angela E.*, 303 S.W.3d 240, 250 (Tenn. 2010); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174-75 (Tenn. 1996); *In Re Adoption of a Female Child*, 896 S.W.2d 546, 547-48 (Tenn. 1995). While this right is fundamental, it is not absolute. The state may interfere with parental rights, through judicial action, in some limited circumstances. *Santosky*, 455 U.S. at 747; *In re Angela E.*, 303 S.W.3d at 250.

Our legislature has identified those situations in which the state's interest in the welfare of a child justifies interference with a parent's constitutional rights by setting forth the grounds upon which termination proceedings can be brought. Tenn. Code Ann. § 36-1-113(g). Termination proceedings are statutory, *In re Angela E.*, 303 S.W.3d at 250; *Osborn v. Marr*, 127 S.W.3d 737, 739 (Tenn. 2004), and parental rights may be terminated only where a statutorily defined ground exists. Tenn. Code Ann. § 36-1-113(c)(1); *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002); *In re M.W.A.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998).

Persons seeking to terminate another's parental rights must prove two things. Tennessee Code Annotated § 36-1-113(c) requires that termination of parental rights must be based upon: (1) A finding by the court that the grounds for termination of parental rights have been established; and (2) that termination of the parent's rights is in the best interests of the child.

Both grounds and best interests must be proved by clear and convincing evidence. *In re Angela E.*, 303 S.W.3d at 250 ; *In re F.R.R., III*, 193 S.W.3d 528, 530 (Tenn. 2006); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). This heightened burden of proof is one of the safeguards required by the fundamental rights involved, *Santosky*, 455 U.S. at 769, and its purpose is to minimize the possibility of erroneous decisions that result in an unwarranted termination of or interference with these rights. *In re Bernard T.*, 596 (Tenn. 2010); *In re Angela E.*, 303 S.W.3d at 250; *In re M.W.A.*, 980 S.W.2d at 622.

> Clear and convincing evidence enables the fact-finder to form a firm belief or conviction regarding the truth of the facts, *In re Audrey S.*, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005), and eliminates any serious or substantial doubt about the correctness of these factual findings. *In re Valentine*, 79 S.W.3d at 546; *State, Dep't of Children's Servs. v. Mims (In re N.B.)*, 285 S.W.3d 435, 447 (Tenn. Ct. App. 2008).

*In re Bernard T.*, 319 S.W.3d at 596.

In contrast to the preponderance of the evidence standard, clear and convincing evidence should demonstrate that the truth of the facts asserted is "highly probable" as opposed to merely "more probable" than not. *In re M.A.R.*, 183 S.W.3d 652, 660 (Tenn. Ct. App. 2005).

The party seeking termination must establish the existence of only one statutory ground to support a termination. *In re Angela E.*, 303 S.W.3d at 251; *In re Valentine*, 79 S.W.3d at 546. Only if at least one ground is established by clear and convincing evidence does the trial court or the reviewing court conduct a best interests analysis. *In re Angela E.*, 303 S.W.3d at 251 (citing *In re Marr*, 194 S.W.3d 490, 498 (Tenn. Ct. App. 2005)). "The best interests analysis is separate from and subsequent to the determination that there is clear and convincing evidence of grounds for termination." *In re Angela E.*, 303 S.W.3d at 254. As we have stated before, the existence of a ground does not inexorably lead to the conclusion that termination of a parent's rights is in the best interest of the child. *In re C.B.W.*, 2006 WL 1749534, at *6 (Tenn. Ct. App. June 26, 2006).

Appellate courts review the trial court's findings of fact in termination proceedings using the standard of review in Tenn. R. App. P. 13(d). *In re Bernard T.*, 319 S.W.3d at 596; *In re Angela E.*, 303 S.W.3d at 246. Thus, reviewing courts will review the trial court's findings of fact *de novo* on the record and accord these findings a presumption of correctness unless the evidence preponderates otherwise. *In the Matter of M.L.P.*, 281 S.W.3d 387, 393 (Tenn. 2009); *In re A.M.H.*, 215 S.W.3d 793, 809 (Tenn. 2007). In light of the heightened burden of proof in termination proceedings, the reviewing court must make its own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, provide clear and convincing evidence that supports all the elements necessary to terminate a parent's rights. *In re Bernard T.*, 319 S.W.3d at 597.

## IV. ABANDONMENT

The statutes on termination of parental rights provide the only authority for a court to terminate a parent's rights. "Abandonment" is defined, *inter alia*, as follows:

(I) For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent(s) or guardian(s) of the child who is the subject of the petition for termination of parental rights or adoption, that the parent(s) or guardian(s) either have willfully failed to visit or have willfully failed to support or have willfully failed to make reasonable payments toward the support of the child.

Tenn. Code Ann. § 36-1-102(1)(A)(I).

"The concept of 'willfulness' is at the core of the statutory definition of abandonment." *In re Adoption of Muir*, 2003 WL 22794524, at *4 (Tenn. Ct. App. Nov. 25, 2003). A parent's rights will not be terminated unless the parent has willfully failed either to visit or to support his or her child for four consecutive months. *Id*. Conduct is willful if it consists of acts or failures to act that are intentional, or voluntary, rather than accidental, or inadvertent. *Id.* Conduct that is the product of free will is "willful." Thus, a person who is aware of his or her actions and intends to do what he or she is doing acts "willfully." *Id*.; *see In re A.D.A.*, 84 S.W.3d 592, 598 (Tenn. 2002) (constitutionally sound finding of abandonment requires finding that parent acted intentionally in failing to support or visit his or her child).

In this case, Mother admits she did not visit Trinity in the four months preceding Grandparents' filing of their petition to terminate, which was September 31, 2011, through January 31, 2012. Mother knew where Trinity was living during this time, and she does not contend she was prevented by anyone from visiting her daughter. Mother did make telephone calls to Trinity during this period, but she did not make any in-person visits. Mother's fear of being incarcerated (due to her probation violation) if she went to Tennessee does not excuse her decision not to visit Trinity. Similarly, her contention that she did not have reliable transportation does not excuse her decision not to visit. We therefore affirm the trial court's judgment that Grandparents proved by clear and convincing evidence that Mother "abandoned" Trinity, for purposes of the statute, by failing to visit Trinity during the four months prior to the filing of the petition to terminate.[4]

## V. BEST INTEREST ANALYSIS

After determining that a statutory ground exists for terminating Mother's parental rights to Trinity, we next consider the trial court's holding that it is in Trinity's best interest to terminate Mother's rights. The focus here is on what is best for the child, not what is best for the parent. *In re Marr*, 194 S.W.3d at 499; *White v. Moody*, 171 S.W.3d 187, 193-94 (Tenn. Ct. App. 2004).

Statutory factors are set out for the best interests analysis that the court "shall consider," but that analysis "is not limited to" the factors enumerated in the statute. Tenn. Code Ann. § 36–1–113(I); *In re Angela E.*, 303 S.W.3d at 251; *In re Audrey S.*, 182 S.W.3d at 878. Every factor need not be applicable in order for the trial court to determine that it is in the best interest of the child for a parent's right to be terminated. The relevance and weight to be given each factor depends on the unique facts of each case. In some cases, one

---

[4]Because only one statutory ground for termination need be proved by clear and convincing evidence, we need not address the trial court's alternative grounds for terminating Mother's parental rights.

factor alone may be sufficient to determine the outcome. *In re Marr*, 194 S.W.3d at 499; *In Re Audrey S.*, 182 S.W.3d at 878. Conducting a best interests analysis is "broad and subjective" and does not include hard and fast rules. *In re Audrey S.*, 182 S.W.3d at 878 n.53 (citing *Yeager v. Yeager*, 1995 WL 422470, at *4 (Tenn. Ct. App. July 19, 1995)).

The factors a court is directed to consider include the following:

(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the

child support guidelines promulgated by the department pursuant to §36-5-101.

Tenn. Code Ann. § 36-1-113(I).

The trial court considered each of the enumerated factors other than (6) and (8), which the court found inapplicable. In addressing each factor, the court assumed it was making a decision about whether Mother should be granted custody of Trinity. It is important to note that Mother was not seeking custody of Trinity in the proceeding before the trial court. Mother acknowledged that Grandparents were doing a fine job raising Trinity and providing her with what she needed to thrive. Mother explained that she wanted the opportunity to develop a relationship with her daughter and to retain some parental rights.

While some of the factors are written in terms of a change of custody to the parent, our courts have held that denying termination of parental rights does not affect custody. *In re Valentine*, 79 S.W.3d at 550; *State v. R. S.*, 2003 WL 22098035, at *18 (Tenn. Ct. App. Sept. 11, 2003).

In reviewing the evidence introduced at trial, we find that the evidence preponderates against some of the trial court's findings of fact regarding Trinity's best interests. Moreover, the majority of the factors the court considered are not applicable because change of custody is not at issue. Mother offered uncontroverted testimony, for example, that she is not addicted to drugs at this point and that she has not drunk alcohol since 2010. Despite this evidence, the court found that "she is still addicted to drugs, maybe 'less addicted' but still addicted." The court based its finding in part on a photograph showing two medicine bottles on a table. Mother testified that one of the bottles contained antibiotics that were prescribed for another child and that the other bottle contained over-the-counter painkillers.[5]

The trial court also noted that Mother has not accessed available social services in determining that Mother "has failed to effect a lasting adjustment." Mother testified, however, that she has turned her life around through hard work and her own willpower in addition to assistance from the church she attends. Mother and her current husband moved into a four-bedroom house in June 2011, and Mother was living in that same house as of the time of trial nearly a year and a half later. Mother's husband works as a roofer and a painter, and he and Mother are able to provide for their family. Mother has both of her older sons living with her again, and, at the time of trial, she was attending classes and working towards a paralegal degree. The fact that Mother has not accessed social service agencies does not,

---

[5]Mother's admission of smoking marijuana one time three months ago and of taking a Lortab that a physician prescribed for her pain resulting from surgery does not clearly and convincingly prove Mother is addicted to drugs.

in and of itself, mean Mother has not made great strides in improving her life situation since the time when Trinity was placed with Grandparents.

Considering the totality of the circumstances, we conclude the evidence is not clear and convincing that it is in Trinity's best interest that Mother's parental rights be terminated. Accordingly, we must reverse the judgment of the trial court. Any issues of visitation should be brought in the juvenile court, which retains jurisdiction over the child who has been found dependent and neglected.

## VI. CONCLUSION

The trial court's judgment terminating Mother's parental rights to Trinity is hereby reversed. Costs of this action shall be taxed to the appellees, S.J.F. and P.J.C.F., for which execution shall issue if necessary.

_____
PATRICIA J. COTTRELL, JUDGE