IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 1, 2022

## IN RE LUCAS L.

**Appeal from the Circuit Court for Hickman County**
**No. 2020-CV-11     Michael E. Spitzer, Judge**

_____

### No. M2020-01614-COA-R3-JV
_____

The father of a child appeals the trial court's finding that the child was dependent and neglected and the victim of severe abuse. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. STEVEN STAFFORD, P. J., W.S., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and THOMAS R. FRIERSON, II, J., joined.

Thomas H. Miller, Franklin, Tennessee, for the appellant, Lucas S.L.

Hilary H. Duke, Dickson, Tennessee, for the appellee, Grant C.

Herbert H. Slatery, III, Attorney General and Jordan K. Crews, Senior Assistant Attorney General, for the appellee, State of Tennessee, Department of Children's Services.

### OPINION

#### I. FACTUAL AND PROCEDURAL HISTORY

This case involves allegations of abuse and neglect against Christina L.C ("Mother") and Lucas S.L. ("Father") toward their son, born in June 2017.[1] Because this appeal only involves Father, we will confine our review only to those facts relevant to his appeal.

There is no dispute in this case that Mother used illegal drugs both while pregnant with the child and thereafter. At the child's birth, he tested positive for THC exposure. But the child was not removed from Mother's custody at that time. Instead, he continued to live

_____

[1] In cases involving allegations of dependency and neglect, it is this Court's policy to remove the full names of children and other parties to protect their identities.

with both Mother and Father; but his parents' relationship was volatile. In May 2018, there was an incident of domestic violence while the child was present. Father was arrested and his bond conditions prevented him from contacting Mother or the child. These conditions were later altered to prevent only violent contact and Father returned to the home in November 2018. But Father left again for good in February 2019. Father's criminal charges were eventually dismissed after a year of no violent contact with Mother.

At some point, the child's maternal uncle Grant C. ("Uncle") filed a pro se emergency petition to declare the child dependent and neglected.[2] The Hickman County Juvenile Court ("the juvenile court") granted the petition on November 8, 2019. The child was placed with his maternal grandparents. Hair drug testing on the child a month later showed that the child had been exposed to opiates and the metabolites for heroin. According to DCS, on December 17, 2019, the child exited DCS custody and was placed with Uncle.

DCS filed its own dependency and neglect petition on January 7, 2020, which petition is the subject of the present appeal. In its petition, DCS alleged that the child was a victim of severe abuse due to drug exposure, citing both the hair drug screening and the positive drug test at birth. Moreover, the petition alleged that both parents had refused services offered by DCS. DCS recommended in its petition that the child remain in the physical custody of Uncle.

Following a hearing, the juvenile court adjudicated the child dependent and neglected by order of April 15, 2020. In its order, the juvenile court also found that both parents committed severe abuse due to the child being exposed to THC in utero. The juvenile court ordered that the child would remain in Uncle's custody.

An appeal to the Hickman County Circuit Court ("the trial court") followed. The de novo hearing took place on October 8, 2020. At trial, the child's medical records from birth were discussed. According to the records, at birth the child was "jittery," "shaking a lot," "feeding poorly," and "vomiting," and had "no stool or urine in the first 24 [hours] after birth." DCS family services worker Alexus Thomas testified these symptoms are regularly seen when a child has been exposed to drugs; these issues are not seen in "healthy, regular babies."[3]

Father's relationship with DCS was often fraught. With the exception of a home study, Father refused to sign the necessary releases for DCS to provide Father with services and generally refused any services offered by DCS. The home study was conducted on

_____

[2] At a later hearing, Father's counsel asserted that he was not served with this petition. Regardless this petition is not at issue in this appeal.
[3] Father's counsel objected during this testimony, but the trial court overruled the objection. Father has not appealed any of the trial court's evidentiary rulings.

January 22, 2020, and showed that the home was appropriate, but lacking appliances; Father promised they were to arrive shortly.

Father's relationship with DCS deteriorated further after the home study. For example, on April 20, 2020, Father sent DCS court liason Aren Ragsdale a series of text messages accusing DCS of having "stole[n]" his "property." Father also threatened DCS with a federal lawsuit and going to "press agency[] journalist" Joe Rogan with his story. Moreover, Father asked DCS to cease contact with him or "it will be considered harassment the next time." So DCS made no further contact with Father after these messages.

Recent events in Father's home were also discussed, but without significant detail. The testimony indicated that a few days prior to the de novo hearing, Father's newborn child by a different mother was removed from the home based on an ex parte order. Father confirmed that his live-in girlfriend currently only sees their child on weekends, but testified that he did not know the reason that the child was removed. According to Father, the hearing as to his younger child was taking place simultaneously with the de novo hearing, preventing him from attending.

The proof was also undisputed that despite multiple requests by DCS, Father had never submitted to a drug screening. According to Father, he should not be required to take a drug test because DCS's dependency and neglect petition did not specifically allege drug use by him and he did not use drugs. But Mother testified that Father had done drugs during their relationship, including marijuana and methamphetamine. Father also admitted to prior marijuana use, including the fact that he had supplied Mother with marijuana while knowing she was pregnant. Father was more evasive about his prior methamphetamine usage, responding to a question about whether he had ever used the drug with "I don't know that I've ever done methamphetamine. What is methamphetamine?" The proof also showed that Father was charged with drug-related crimes in November 2018; those charges had not been resolved at the time of the de novo hearing. While Father was consistent in his belief that he should not be required to undergo drug testing, he did insist that Uncle and the maternal grandparents undergo drug testing given the child's hair screening in December 2019.[4] They all willingly participated in drug testing, which was negative for all substances.

The proof also focused on Father's income and his failure to pay any child support following his separation from Mother. But Father claimed that he was unable to pay support because Uncle had cut off contact with Father. Uncle testified that he cut off contact after Father threatened him. Father's last visit with the child was in January 2020.

On November 10, 2020, the trial court issued its final order declaring the child

---

[4] There is no dispute that Father was not around the child in December 2019.

dependent and neglected and a victim of severe abuse by both Mother and Father.[5] In its order, the trial court specifically found that Mother and the DCS workers were credible, while Father lacked credibility.[6] The trial court therefore ruled that the child would remain in Uncle's physical custody. Father was permitted visitation every other Sunday "through December 6, 2020, at which time it shall end if [he] has not provided a ten panel nail cuticle test and attended at least one (1) anger management therapeutic session with a licensed and certified professional counselor of his choice." Father now appeals to this Court.

## II. ISSUES PRESENTED

On appeal, Father challenges both the severe abuse finding and the trial court's decision to adjudicate the child as dependent and neglected.

## III. STANDARD OF REVIEW

As explained by the Tennessee Supreme Court:

A parent's right to the care and custody of her child is among the oldest of the judicially recognized fundamental liberty interests protected by the Due Process Clauses of the federal and state constitutions. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *In re Angela E.*, 303 S.W.3d 240, 250 (Tenn. 2010); *In re Adoption of Female Child*, 896 S.W.2d 546, 547–48 (Tenn. 1995); *Hawk v. Hawk*, 855 S.W.2d 573, 578-79 (Tenn. 1993). But parental rights, although fundamental and constitutionally protected, are not absolute. *In re Angela E.*, 303 S.W.3d at 250. "'[T]he [S]tate as *parens patriae* has a special duty to protect minors . . . .' Tennessee law, thus, upholds the [S]tate's authority as parens patriae when interference with parenting is necessary to prevent serious harm to a child." *Hawk*, 855 S.W.2d at 580 (quoting *In re Hamilton*, 657 S.W.2d 425, 429 (Tenn. Ct. App. 1983)); *see also Santosky v. Kramer*, 455 U.S. 745, 747 (1982); *In re Angela E.*, 303 S.W.3d at 250.

*In re Carrington H.*, 483 S.W.3d 507, 522–23 (Tenn. 2016) (footnote omitted).

---

[5] As a preliminary matter, the trial court also declared that Father was the child's legal parent. No party disputes this determination.

[6] Specifically, the trial court found as follows:

In considering the overall testimony of [Father], his demeanor, consideration of questions asked, and tendencies to "not recall" questions that would be detrimental to him, the Court notes that [Father] was evasive and angry at times, refused to answer some questions without court intervention, failed to recall recent events, and the Court cannot find him to be a credible witness.

- 4 -

Here, Father argues that the trial court erred in its findings of dependency and neglect and severe abuse as to the child at issue. The Tennessee General Assembly has described by statute what constitutes dependency and neglect, the procedures and steps to be taken in making this determination, and the jurisdiction of the juvenile courts. As is relevant to the instant appeal, a "dependent and neglected child" is a child:

>  (F) Who is in such condition of want or suffering or is under such improper guardianship or control as to injure or endanger the morals or health of such child or others;
>
> (G) Who is suffering from abuse or neglect; . . . .

Tenn. Code Ann. § 37-1-102(b)(13) (2020) (outlining other definitions not at issue in this case). In turn, "abuse" is defined as:

> [A] person under the age of eighteen (18) [who] is suffering from, has sustained, or may be in immediate danger of suffering from or sustaining a wound, injury, disability or physical or mental condition caused by brutality, neglect or other actions or inactions of a parent, relative, guardian or caretaker[.]

Tenn. Code Ann. § 37-1-102(b)(1) (2020). On the other hand, "severe child abuse" is defined, in relevant part, as:

> (A)(i) The knowing exposure of a child to or the knowing failure to protect a child from abuse or neglect that is likely to cause serious bodily injury or death and the knowing use of force on a child that is likely to cause serious bodily injury or death;
>
>> (ii) "Serious bodily injury" shall have the same meaning given in § 39-15-402(c).[7]

Tenn. Code Ann. § 37-1-102(b)(27) (2020) (outlining other definitions not at issue in this case).

The General Assembly has vested juvenile courts with "exclusive original jurisdiction" to hear allegations that a child is dependent and neglected as defined above. Tenn. Code Ann. § 37-1-103(a)(1). The statutes governing dependency and neglect

---

[7] Section 39-15-402(c) defines "serious bodily injury" as including, but not being limited to the following:

> second- or third-degree burns, a fracture of any bone, a concussion, subdural or subarachnoid bleeding, retinal hemorrhage, cerebral edema, brain contusion, injuries to the skin that involve severe bruising or the likelihood of permanent or protracted disfigurement, including those sustained by whipping children with objects and acts of female genital mutilation as defined by [statute].

proceedings require, in effect, a two-step analysis. First, under Tennessee Code Annotated section 37-1-129, the juvenile court is required to hold a hearing and to make findings as to whether a child is dependent and neglected. The quantum of proof required is clear and convincing evidence. *See* Tenn. R. Juv. Prac. & Proc. 307(e) ("If the court finds that the allegations have not been met by clear and convincing evidence, it shall dismiss the petition. . . . If the court finds that the allegations have been proved by clear and convincing evidence, it shall adjudicate the child dependent and neglected"). In many circumstances, a juvenile court considering whether a child is dependent and neglected must also consider whether the child is a victim of severe abuse. See Tenn. Code Ann. § 37-1-129(b)(2) ("If the petition alleged the child was dependent and neglected as defined in § 37-1-102(b)(13)(G) [i.e., "suffering from abuse or neglect"], or if the court so finds regardless of the grounds alleged in the petition, the court shall determine whether the parents or either of them or another person who had custody of the child committed severe child abuse."). Like the dependency and neglect findings, a finding of severe abuse must also be supported by clear and convincing evidence. ***In re Tamera W.***, 515 S.W.3d 860, 869 (Tenn. Ct. App. 2016) (citing ***Tenn. Dep't of Children's Servs. v. M.S.***, No. M2003-01670-COA-R3-CV, 2005 WL 549141, at *10 (Tenn. Ct. App. Mar. 8, 2005), *perm. app. denied* (Tenn. Aug. 29, 2005)) ("DCS was required to prove both the fact that a child is dependent and neglected and the fact that a parent has engaged in severe child abuse by clear and convincing evidence.").

Whether the ultimate issues of dependency and neglect and severe child abuse have been established by clear and convincing evidence are questions of law, which we review de novo with no presumption of correctness. *See **In re S.J.***, 387 S.W.3d 576, 588 (Tenn. Ct. App. 2012) (quoting ***In re Samaria S.***, 347 S.W.3d 188, 200 (Tenn. Ct. App. 2011)) ("Whether the combined weight of the facts, either as found by the trial court or supported by a preponderance of the evidence, establish clearly and convincingly that the parent committed severe child abuse is a question of law, subject to de novo review with no presumption of correctness."). This Court reviews the trial court's findings of fact de novo on the record accompanied by a presumption of correctness, "unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d); ***In re M.J.B.***, 140 S.W.3d 643, 654 (Tenn. Ct. App. 2004). If some of the trial court's factual findings are based on its determinations of the credibility of the witnesses, then this Court will afford great weight to those credibility determinations and will not reverse such determinations absent clear evidence to the contrary. *See **McCaleb v. Saturn Corp.***, 910 S.W.2d 412, 415 (Tenn. 1995).

Moreover, as we have explained regarding the applicable standard of review:

Under the clear and convincing evidence standard, it is important to "distinguish between the specific facts found by the trial court and the combined weight of those facts." ***In re Tiffany B.***, 228 S.W.3d 148, 156 (Tenn. Ct. App. 2007). Each specific underlying fact need only be established by a preponderance of the evidence. Such specific underlying facts include whether a particular injury suffered by the child was the result

- 6 -

of nonaccidental trauma, and whether the caregiver's conduct with respect to the injury was "knowing." Once these specific underlying facts are established by a preponderance of the evidence, the court must step back to look at the combined weight of all of those facts, to see if they clearly and convincingly show severe child abuse.

*In re S.J.*, 387 S.W.3d 576, 591–92 (Tenn. Ct. App. 2012)

## IV. ANALYSIS

## A.

Father first argues that the child was not a victim of severe abuse perpetrated by him. On this issue, the trial court made the following relevant findings:

The perpetrators are [Father] and [Mother], both of whom testified that they used marijuana during [] [M]other's pregnancy. Both parties also testified that [Father] generally supplied those drugs, and each used them recreationally from the time of conception to the birth of [the child]. The Court cannot find that these parents were unaware of the risk of serious bodily injury to the unborn child and finds that they knowingly failed to protect [the child] from the risk of serious bodily injury or death. Both [M]other and [F]ather participated in the use of drugs during [Mother's] pregnancy, and both equally contributed to the positive screen for [the child] at birth.

Father's argument to the contrary is narrow. He does not dispute that the child tested positive for THC exposure at birth. He does not deny that the child's medical records contain notations that the child, at birth, was "jittery," "shaking a lot," "feeding poorly," and "vomiting," and had "no stool or urine in the first 24 [hours] after birth." He also does not deny that he provided marijuana to Mother while she was pregnant or that he knew she was using drugs while pregnant. Finally, Father does not appear to dispute that Tennessee law provides that knowingly providing illegal drugs to a pregnant woman can constitute severe abuse. *See In re A.L.H.*, No. M2016-01574-COA-R3-JV, 2017 WL 3822901, at *4 (Tenn. Ct. App. Aug. 31, 2017) ("When a parent knowingly fails to intervene when a child is being exposed to drugs, that failure constitutes severe child abuse due to the failure to protect the child."); *In re Garvin M.*, No. E2013-02080-COA-R3-PT, 2014 WL 1887334, at *5 (Tenn. Ct. App. May 9, 2014) ("[A] father may have his parental rights terminated based on the ground of severe child abuse for failing to take action to protect an unborn child from illicit drug use by the Mother during pregnancy."); *In re Joshua E.R.*, No. W2011-02127-COA-R3-PT, 2012 WL 1691620, at *6 (Tenn. Ct. App. May 15, 2012) (affirming a finding a severe abuse against a father who supplied drugs to the mother while pregnant).

Instead, he argues that marijuana, or THC, simply is not a serious enough drug to support a finding of severe abuse in a case where no medical proof was submitted tying the drug exposure to severe injuries suffered by the child. In support, Father cites the controlled substance schedule assigned to THC compared to other drugs, such as methamphetamine, as well the fact that little to no cases have found severe abuse based on prenatal marijuana use alone. Respectfully, we disagree. It is well-settled that expert proof is not required to prove severe abuse under Tennessee Code Annotated section 37-1-102(b)(27)(A). *See In re A.L.H.*, 2017 WL 3822901, at \*4 ("That provision does not explicitly require the opinion of a qualified expert. . . . Thus, under the relevant statute, there is no language requiring that an expert opinion is needed or that a specific condition would likely result from the abuse or neglect.").[8] And we have previously recognized that Tennessee courts have "repeatedly held that exposure of a child to drugs constitutes severe child abuse," regardless of the fact that no specific injury was proven. *Id.* Instead, we have held that "the healthy development of the child . . . does not diminish the severity of the harm to which the child was exposed." *In re M.J.J.*, No. M2004-02759-COA-R3-PT, 2005 WL 873305, at \*8 (Tenn. Ct. App., filed April 14, 2005).

Of course, *In re A.L.H.* involved exposure to methamphetamine. *Id.* But we have previously rejected a parent's argument that severe abuse did not occur because the illegal drugs that the parent used were less risky than other illegal drugs:

> On appeal, mother acknowledges that "[t]his Court has upheld, in a multitude of cases, that a mother's use of drugs while pregnant can support a finding of severe child abuse." She argues, however, that, in the cases cited by the trial court and in a string of cases she cites in her brief, "the facts in all of these cases much more clearly and convincingly support a finding of severe abuse than do the facts of the case at bar." Her argument is not persuasive. The issue before us is not whether the evidence in this case is lesser than that in other cases. The issue is simply whether the evidence clearly and convincingly shows severe child abuse. Mother has failed to demonstrate how the evidence in this case preponderates against the trial court's finding of clear and convincing evidence. Furthermore, she has failed to distinguish these cases from her case other than to say that the specific drugs in those cases were more harmful and/or that the child suffered some specific harm. Instead of citing authority for her argument that her prenatal drug use does not constitute severe child abuse, mother cites numerous cases in which this Court upheld a finding that prenatal drug use constituted severe child abuse. To us, those cases demonstrate the uniform view of this Court that prenatal drug use does, in fact, constitute severe child abuse.

*In re P.T.F.*, No. E2016-01077-COA-R3-PT, 2017 WL 2536847, at \*4 (Tenn. Ct. App.

---

[8] *In re A.L.H.* involved the definition of severe abuse prior to its current renumbering. The change has no effect on the analysis.

June 12, 2017). Thus, "[i]t is the exposure of the child to harm that matters, not the method or level of exposure." *In re A.L.H.*, 2017 WL 3822901, at *4. Cases where it was unclear if the child had even been exposed to a parent's fairly isolated marijuana use are simply not relevant to our analysis. *See, e.g., In re K.A.P.*, No. W2012-00281-COA-R3-JV, 2013 WL 6665012, at *7 (Tenn. Ct. App. Dec. 17, 2013) (reversing an order of dependency and neglect because the record did not reveal whether the child was present when the mother was using marijuana and the mother had been passing drug screens by the time of the de novo hearing). But prenatal drug use to the point where the child tests positive for the substance at birth *is* exposure of the child to drugs. So, "[p]renatal abuse of controlled substances constitutes severe child abuse, whether or not the child actually suffers harm." *In re Colton B.*, No. M2018-01053-COA-R3-PT, 2018 WL 5415921, at *8 (Tenn. Ct. App. Oct. 29, 2018) (citation omitted).

Here, Mother testified that she used marijuana during her pregnancy, which was supplied to her by Father. When the child was born, he was suffering from adverse symptoms that testimony indicated were associated with prenatal drug exposure. It is fortunate that the child may not suffer any lasting effects from this exposure. But that does not change the fact that, by supplying Mother with drugs during her pregnancy, Father knowingly exposed the child to a substance that Tennessee law recognizes has the likelihood to cause the child severe harm. We therefore affirm the trial court's finding that Father committed severe abuse against the child.

## B.

Father next argues that there was no basis for a dependency and neglect finding "against [him]." In finding that the child was dependent and neglected, the trial court cited the severe abuse perpetrated on the child, as well as Tennessee Code Annotated sections 37-1-102(b)(13)(F) (defining a "dependent and neglected child" as one "[w]ho is in such condition of want or suffering or is under such improper guardianship or control as to injure or endanger the morals or health of such child or others") & (G) (defining a "dependent and neglected child" as one "[w]ho is suffering from abuse or neglect"). We have upheld the trial court's finding that the child was the victim of severe abuse perpetrated by both his parents. The severe abuse finding also supports a finding of dependency and neglect. *See In re Dakota C.R.*, No. W2010-01946-COA-R3-JV, 2012 WL 1418048, at *11 (Tenn. Ct. App. Apr. 24, 2012) ("[O]ur finding that Nathaniel was severely abused by Mother is sufficient to render the children dependent and neglected even if no other abuse occurred."); *In re H.L.F.*, 297 S.W.3d 223, 235 (Tenn. Ct. App. 2009) ("Therefore, the finding that Father engaged in severe child abuse is a sufficient basis, on its own, to find the children dependent and neglected.").

Still, Father argues that the remainder of the trial court's dependency and neglect findings do not reflect the allegations in the petition or the proof submitted. Specifically, the trial court found as to Father that

there is clear and convincing evidence that if the child is placed with [Father], without anger management and therapy, the child would be in such a condition of want or suffering and under such improper guardianship or control that he would be at risk of danger to his health or morals. The Court notes that [Father] has refused all reasonable efforts by [DCS] to join [] [F]ather and [the] child in an acceptable environment, and [that] placing the child with [Father] at this time would not be in the child's best interest. [Father] has continually refused to submit to a drug screen, which[,] due to his own admitted history of drug use and criminal charges related to drugs[,] is sufficient corroboration for this Court to infer that he has continued that drug use to the extent that may present a detrimental environment to the child.

Father's arguments against the trial court's findings are numerous, but not well-developed. First, Father takes issue with the trial court's mention of the domestic violence incident because he provided "valid reasons why the situation upset him." Respectfully, the fact that a situation is upsetting does not excuse a parent's inability to remain in control of his or her anger while a child is present. To be sure, Father cites no legal authority for such a suggestion.

Father also takes issue with the trial court's finding that DCS could not join him with the child in an acceptable environment, citing the successful home study that he allowed. But a safe environment for the child does not mean just the physical structure of a parent's home. It also requires a home free from drug use. *See, e.g., **In re Navada N**., 498 S.W.3d at 595 ("[A] suitable home requires more than a proper physical living location. It requires that the home be free of drugs and domestic violence." (quotation marks and citations omitted)). And Father has consistently refused to provide any drug screens to DCS, despite evidence that he used drugs when Mother was pregnant and thereafter.

But Father argues that the trial court was not permitted to rely on any concern over drug use because such was not alleged in the initial dependency and neglect petition specifically as to him. As an initial matter, we note that unlike findings of severe abuse, a finding of dependency and neglect is not directed toward a parent specifically. *See **In re Daymien T.***, 506 S.W.3d 461, 470 (Tenn. Ct. App. 2016) ("We also reject Father's argument that the order does not find the child dependent and neglected "as regards" him. First, we note that [] [s]ection 37-1-102(b)(12) defines "[d]ependent and neglected child" as, *inter alia*, a child "[w]ho is suffering from abuse or neglect." Further, [] [s]ection 37-1-130 allows the juvenile court to make an appropriate disposition for the child "[i]f the child is found to be dependent or neglected." Nothing in these provisions specifically requires that a dependency and neglect findings must be made against or 'as regards' to a specific parent.").

Moreover, the trial court specifically addressed, and rejected, this particular argument. First, the trial court noted that the dependency and neglect petition did allege

that the child was exposed to drugs at birth without specifying a particular parent who caused the exposure. The trial court held that this was sufficient to place Father on notice that his drug use was at issue generally. Moreover, the trial court cited Tennessee Code Annotated section 37-1-129(b)(2), which gives the court leeway to find that a child is dependent and neglected under section 37-1-102(b)(13)(G) "regardless of the grounds alleged in the petition[.]" Father cites no legal authority that undermines the trial court's construction or application of section 37-1-129(b)(2). In fact, Father's brief does not mention this provision or cite any legal authority of any kind in support of his argument. Rather, he merely states that the dependency and neglect petition did not allege drug use by him. This argument is nothing more than skeletal and not proper on appeal. *See Sneed v. Bd. of Pro. Resp. of Supreme Ct.*, 301 S.W.3d 603, 615 (Tenn. 2010) ("It is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived.").

Consequently, we cannot conclude that the trial court erred in considering the issue of drug use with regard to Father. Here, the child was removed based on drug use in the home when Father was not present. But the child had also tested positive for drug exposure when Father was in his life. Under these circumstances, we cannot conclude that it was unreasonable of DCS to ask Father to complete a drug screening. Father categorically refused, all the while insisting that others who were around his child be tested. His repeated refusal, coupled with his admitted past drug use, leaves considerable doubt that he is clean from drugs. And Father does not appear to dispute that a home where illegal drugs are being used would place the child at risk for abuse and neglect. So considering the evidence as a whole, there was sufficient proof to find that placing the child with Father would subject him to further abuse or neglect. The trial court's finding that the child is dependent and neglected is therefore affirmed.

## V. CONCLUSION

The judgment of the Hickman County Circuit Court is affirmed, and this cause is remanded for further proceedings. Costs of this appeal are taxed to Appellant Lucas S.L., for which execution may issue if necessary.

s/ J. Steven Stafford
J. STEVEN STAFFORD, JUDGE

- 11 -