IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 15, 2023 Session

IN RE RORI H.[1]

**Appeal from the Circuit Court for Hamilton County**
**No. 21-A-142          Michael Dumitru, Judge**

_____

**No. E2023-00212-COA-R3-PT**

_____

In this termination of parental rights case, Brian T. and Samantha T., the maternal grandparents of Rori H., appeal the trial court's ruling that termination of the parental rights of Rori's father, Brennan H., is not in the child's best interests. We conclude that the trial court erred in finding as grounds for termination that the father abandoned the child by failing to pay support in the four months preceding the petition. Having found no grounds for termination, we do not reach a best interests determination. Ultimately, we affirm the trial court's denial of the petition for termination. We remand the case for further proceedings pursuant to Tennessee Code Annotated section 36-1-117(b)(4). Finally, we conclude that the father is not entitled to an award of attorney's fees incurred on appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court for Hamilton County Affirmed**

KRISTI M. DAVIS, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and THOMAS R. FRIERSON, II, J., joined.

Bill W. Pemerton, Chattanooga, Tennessee, for the appellants, Samantha T. and Brian T.

Catherine M. White, Chattanooga, Tennessee, for the appellee, Brennan H.

Jennifer Sharp Wilhoit, Chattanooga, Tennessee, Guardian Ad Litem for Rori H.

---

[1] In actions involving juveniles, it is this Court's policy to protect the privacy of the children by using only the first name and last initial, or only the initials, of the parties involved.

# OPINION

## BACKGROUND

Rori H. ("Rori" or "the Child") was born to Emily T. ("Mother") and Brennan H. ("Father") in June of 2020. Mother and Father both struggled with substance abuse, although Mother's problems were significantly greater than Father's. While this case was pending, Mother passed away due to a drug overdose.

For the first few months of Rori's life, Mother, Father, and Rori lived in Chattanooga with Brian T. and Samantha T. ("Petitioners"), who are Mother's father and stepmother and Rori's maternal grandparents. In August or September of 2020, Rori, Mother, and Father moved to Hilton Head, South Carolina to live with Mother's great-grandmother and great aunt. Father testified that during this time, Mother struggled with substance abuse and that he served as Rori's primary caregiver by feeding and bathing him, changing his diaper, and playing with him. Father testified that Mother's great-grandmother and great aunt were fearful of the COVID-19 virus and did not allow Mother or Father to work outside the home during this time.

In early February of 2021, an altercation occurred at the Hilton Head home between Mother, Father, Mother's great-grandmother, and Mother's great aunt. Father acknowledged that he pushed the great-grandmother while he was holding Rori and that as a result of his actions, the police were called and Father was forced to leave the property. Father's mother, who lives in Florida, drove to South Carolina, picked Father up, and drove him back to Florida. Rori remained with Mother in Hilton Head. On February 8, 2021, Petitioners traveled to South Carolina at Mother's request, retrieved Rori, and brought Rori back to their home in Chattanooga. On February 22, 2021, Father filed a Petition to Establish Paternity and Permanent Parenting Plan and a Motion for Ex-Parte Emergency Custody in the Juvenile Court for Hamilton County (the "juvenile court"). The juvenile court granted Father's Motion for Ex-Parte Emergency Custody. However, that same day, Brian T. filed a competing Petition for Emergency Temporary Custody in the juvenile court. The juvenile court ultimately granted Petitioners temporary custody of Rori.[2]

On March 3, 2021, Petitioners filed their Petition for Termination of Parental Rights and for Adoption (the "Petition") in the Circuit Court for Hamilton County (the "trial court").[3] Petitioners alleged that Father posed a risk of substantial harm to Rori "[g]iven

---

[2] The juvenile court held a hearing on the requests for temporary custody on April 23, 2021. Father's mother, Rori's paternal grandmother, also attempted to gain temporary custody of Rori in the course of the juvenile court proceedings but was unsuccessful.

[3] Prior to the juvenile court proceedings, Petitioners resided together but were not married. After obtaining temporary custody of Rori, Petitioners married on March 2, 2021, the day before filing the Petition.

his background, repeated criminal history and drug problems, [and] his failure to provide any support to the child[.]" Thereafter, Mother's mother, Rori's maternal grandmother, filed a motion to intervene and for grandparent visitation. She opposed Petitioners' efforts to adopt Rori, alleging that Petitioners ceased all contact between Rori and Father's family. She further alleged that Brian T., who is the maternal grandmother's ex-husband, had been married several times and previously lost custody of and parental rights to some of his own children.

The trial court held a final hearing on the Petition on January 10, 2023, at which Petitioners and Father testified. On January 13, 2023, the trial court entered an order denying the maternal grandmother's motion to intervene as untimely. On January 17, 2023, the trial court entered an order on the Petition, ultimately concluding that Petitioners failed to meet their burden of proof that terminating Father's parental rights was in Rori's best interests. As relevant, the trial court found as follows:

> The testimony at Trial established that the Child has been in the custody and care of Petitioners since February 23, 2021. It is undisputed that Father messaged Petitioners daily while the Child was in their custody to ask how the Child was doing. Although Petitioners often responded to Father's inquiries, there is no dispute that all communications ceased in late July 2021. The reason for the cessation in communication, however, is unclear. On the one hand, Petitioners testified that they never blocked Father's phone number, changed addresses, or took any other steps to preclude Father from communicating regarding the Child. On the other, Father testified that Petitioners expressly told him in July 2021 that they were blocking his number and he would need to accept the fact he was no longer in the Child's life. The [c]ourt finds Father's testimony credible on this point, which Petitioners did not refute in rebuttal.

> The Child has by all accounts thrived under the care of Petitioners, who provide all necessary care for the Child, both financially and otherwise. Petitioners live in a three-bedroom home, in which [the] Child has his own room and a full basement area in which to roam and play. The Child has no health issues. [Brian T.] testified that although the Child was "slightly delayed" developmentally when he started day care, he is now excelling. [Samantha T.] testified that the Child had been over-bottle-fed when he came to them, but they worked diligently to address the issue and establish proper motor skills. The Child is routine-oriented and thrives on consistency, which Petitioners provide. Petitioners' families are also involved in the Child's life, including [Samantha T.'s] parents, [Brian T.'s] sister, and several younger extended family members between the ages of 3 and 14.

*       *       *

Father, on the other hand, has by his own admission struggled mightily. In addition to Mother passing away on October 2, 2022, Father has battled issues with depression, admittedly used marijuana and Xanax on occasion, found himself in the company of other drug users, and is currently out on bond for charges of domestic aggravated assault and driving under the influence. Father also admits that, other than an alleged shipment of food Father says was "rejected" in November 2021, he has not spent or sent any money for the benefit of the Child since sometime prior to the four months leading up to the filing of this petition.

Yet Father testified passionately and credibly about his genuine desire to be able to see the Child and be a part of the Child's life. He moved back to Chattanooga in June 2021—one month before contact with the Child ceased—to be closer to the Child, and currently lives with his cousin rent-free. He has taken two part-time jobs to get back on his feet. However, he also conceded that he currently is "not fit to have [the Child]," is "in no position to" take custody of the Child, and is "financially unable" to support the Child.

It was undisputed at trial that Father did not pay child support in the four months preceding the filing of the Petition, and the trial court concluded that this failure amounted to abandonment pursuant to Tennessee Code Annotated sections 36-1-113(g)(1) and 36-1-102. However, the trial court ultimately concluded that Petitioners failed to establish that terminating Father's parental rights was in Rori's best interests. The trial court reasoned that Father was Rori's primary caregiver when they lived together in South Carolina and that Father took meaningful steps to be closer to Rori after losing custody. Although the trial court acknowledged that Father is currently unable to care for the Child, the trial court also acknowledged Father's efforts to "get his life in order."

Petitioners filed a motion for new trial, which was denied, and this timely appeal followed.

## ISSUES

The sole issue Petitioners raise is whether the trial court erred in finding that termination of Father's parental rights was not in Rori's best interests. Father raises his own issues, which we restate slightly as follows: (1) whether the trial court erred by finding that Father's failure to support Rori was a ground for termination; (2) whether the trial court must enter an order making provisions for Father to resume his relationship with Rori; and (3) whether Father is entitled to attorney's fees and costs incurred on appeal.

- 4 -

Our Supreme Court has explained that:

A parent's right to the care and custody of her child is among the oldest of the judicially recognized fundamental liberty interests protected by the Due Process Clauses of the federal and state constitutions. *Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054, 147 L.Ed.2d 49 (2000); *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S. Ct. 1208, 31 L.Ed.2d 551 (1972); *In re Angela E.*, 303 S.W.3d 240, 250 (Tenn. 2010); *In re Adoption of Female Child*, 896 S.W.2d 546, 547–48 (Tenn. 1995); *Hawk v. Hawk*, 855 S.W.2d 573, 578–79 (Tenn. 1993). But parental rights, although fundamental and constitutionally protected, are not absolute. *In re Angela E.*, 303 S.W.3d at 250. "'[T]he [S]tate as *parens patriae* has a special duty to protect minors....' Tennessee law, thus, upholds the [S]tate's authority as *parens patriae* when interference with parenting is necessary to prevent serious harm to a child." *Hawk*, 855 S.W.2d at 580 (quoting *In re Hamilton*, 657 S.W.2d 425, 429 (Tenn. Ct. App. 1983)); *see also Santosky v. Kramer*, 455 U.S. 745, 747, 102 S. Ct. 1388, 71 L.Ed.2d 599 (1982); *In re Angela E.*, 303 S.W.3d at 250.

*In re Carrington H.*, 483 S.W.3d 507, 521–22 (Tenn. 2016). Tennessee Code Annotated section 36-1-113 provides the various grounds for termination of parental rights. *See* Tenn. Code Ann. § 36-1-113(g). "A person seeking to terminate parental rights must prove both the existence of one of the statutory grounds for termination and that termination is in the child's best interest." *In re Jacobe M.J.*, 434 S.W.3d 565, 568 (Tenn. Ct. App. 2013) (citing Tenn. Code Ann. § 36-1-113(c)).

In light of the substantial interests at stake in termination proceedings, the heightened standard of clear and convincing evidence applies. *In re Carrington H.*, 483 S.W.3d at 522 (citing *Santosky*, 455 U.S. at 769). This heightened burden "minimizes the risk of unnecessary or erroneous governmental interference with fundamental parental rights[,]" and "enables the fact-finder to form a firm belief or conviction regarding the truth of the facts[.]" *Id.* (citing *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010)). "The clear-and-convincing-evidence standard ensures that the facts are established as highly probable, rather than as simply more probable than not." *Id.* (citing *In re Audrey S.*, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005)). Accordingly, the standard of review in termination of parental rights cases is as follows:

An appellate court reviews a trial court's findings of fact in termination proceedings using the standard of review in Tenn. R. App. P. 13(d). *In re Bernard T.*, 319 S.W.3d at 596; *In re Angela E.*, 303 S.W.3d at 246. Under Rule 13(d), appellate courts review factual findings de novo on the record and accord these findings a presumption of correctness unless the

evidence preponderates otherwise. *In re Bernard T.*, 319 S.W.3d at 596; *In re M.L.P.*, 281 S.W.3d 387, 393 (Tenn. 2009); *In re Adoption of A.M.H.*, 215 S.W.3d 793, 809 (Tenn. 2007). In light of the heightened burden of proof in termination proceedings, however, the reviewing court must make its own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights. *In re Bernard T.*, 319 S.W.3d at 596–97. The trial court's ruling that the evidence sufficiently supports termination of parental rights is a conclusion of law, which appellate courts review de novo with no presumption of correctness. *In re M.L.P.*, 281 S.W.3d at 393 (quoting *In re Adoption of A.M.H.*, 215 S.W.3d at 810). Additionally, all other questions of law in parental termination appeals, as in other appeals, are reviewed de novo with no presumption of correctness. *In re Angela E.*, 303 S.W.3d at 246.

*In re Carrington H.*, 483 S.W.3d at 523–24.

## DISCUSSION

The trial court determined that Petitioners proved that Father abandoned Rori by failing to support him in the four months preceding the filing of the Petition. Specifically, the trial court found it undisputed that Father did not pay child support for Rori during this time period.

Abandonment can occur when parents or guardians "either have failed to visit or have failed to support or have failed to make reasonable payments toward the support of the child" for a period of four consecutive months immediately before the filing of a petition to terminate parental rights. Tenn. Code Ann. § 36-1-102(1)(A)(i)(a). Lack of willfulness can serve as an affirmative defense, however, the parent "shall bear the burden of proof that the failure to visit or support was not willful" and must establish the lack of willfulness by a preponderance of evidence. Tenn. Code Ann. § 36-1-102(1)(I).

The Petition was filed on March 3, 2021, and it is undisputed that Father did not pay support during the four preceding months. It is also undisputed, however, that for the majority of this time period, Rori lived with Father, Mother, Mother's great-grandmother, and Mother's great aunt in South Carolina. The proof also adduced that during this time period, Mother's great-grandmother and great aunt did not allow either Mother or Father to work outside of the home for fear of the COVID-19 pandemic. Father testified that during this time period, he served as Rori's primary caregiver. The trial court specifically asked Father at trial what kind of support he provided to Rori from November of 2020 to March of 2021:

- 6 -

[FATHER]: Being his dad. No financial. I did not have a job. I just took care of him.

THE COURT: Tell me what that means when you say you took care of him.

[FATHER]: Loving him, changing his dirty diapers. I mean, taking him outside in the mornings when no one's awake. Taking pictures of him. Trying to make him laugh and smile. Listening to his heart beat. Blowing on his tummy. Trying to set an example of what I did not get growing up.

…

… I basically was a stay-at-home dad constantly. And then had to simultaneously also take care of [Mother] at the same time. So that's -- I had -- and I was in school full time. I was going for a computer science degree.

In its final order, the trial court found that Father "provided necessary care for the Child, including, but not limited to, changing diapers, feeding the Child, and entertaining the Child."

In light of the foregoing, the trial court erred by finding that Father abandoned Rori by failure to support. Father had physical custody of Rori during most of the relevant four-month period prior to the Petition being filed, and Father and Rori lived together. Father was Rori's primary caretaker. The abandonment statute simply does not apply in a case such as this one, where a parent has full custody of and devotes full-time care to their child during most of the salient four-month period. *See In re Allainah B.*, No. M2020-01381-COA-R3-PT, 2021 WL 4453465, at *7 (Tenn. Ct. App. Sept. 29, 2021) (holding that "to the extent that Petitioners properly alleged abandonment by failure to support, this allegation is nonsensical in light of the fact that Father undisputedly had legal and physical custody of the Child in the four months preceding his incarceration…. It is unclear, therefore, to whom Father would have made support payments during the correct four-month period."). We reverse the trial court's finding that Petitioners proved abandonment by clear and convincing evidence.

Because Petitioners have proved no statutory grounds for termination of Father's parental rights, we need not address the issue of Rori's best interests. *See* Tenn. Code Ann. § 36-1-113(c) (providing that statutory grounds for termination must be proven).

Next, Father contends that the trial court erred by failing to enter an order allowing Father to resume his relationship with Rori. Father relies on the following statute in making this argument:

(b)(1) If a petition has been filed to establish paternity of the child who is the subject of the adoption proceeding, the adoption court shall have exclusive jurisdiction to hear and decide any paternity petition filed in the adoption proceeding or that has been transferred to it pursuant to § 36-2-307.

(2) The paternity petition shall be heard and concluded prior to any action by the adoption court to determine whether to grant the petition for adoption.

(3)(A) The petition shall be granted if it is shown by a preponderance of the evidence that the person alleged to be the father of the child is the father of the child; provided, that the entry of such an order shall not prevent the filing and consideration of a petition pursuant to § 36-1-113.

(B) If the petition to establish paternity is granted, then the parental rights of the legal father must be terminated as provided by § 36-1-113 or as otherwise provided by law, or the legal father must execute a surrender under § 36-1-111, file a parental consent, or the legal father must co-sign the petition for adoption pursuant to subsection (f) before the court may be authorized to order an adoption of the child.

(4) *If grounds for termination of parental rights do not exist, then the child's legal father shall be granted custody of the child, unless the court determines, upon clear and convincing evidence, that the legal father is unable currently to provide proper custodial care for the child*, in which case the court shall make such orders as may be necessary for the child's care and supervision pursuant to § 37-1-140; or unless the child's mother's rights have not been previously terminated, in which case the court shall make a determination of the custodial status of the child between the legal father and the mother, and the court may make such other orders as are necessary to provide for the child's care and supervision. If the court determines that neither parent is suitable to provide for the care of the child, it shall make such other orders as it may determine are necessary for the child's care and supervision.

Tenn. Code Ann. § 36-1-117(b)(1)–(4) (emphasis added). Our research revealed only one case in which this Court construed the foregoing statute, *In re Lyric J.*, No. M2014-00806-COA-R3-PT, 2014 WL 7182075 (Tenn. Ct. App. Dec. 16, 2014), and that case is factually similar to the one at bar. In *In re Lyric J.*, the mother of the child at issue passed away shortly after the child's birth, and the Juvenile Court for Davidson County granted the maternal grandmother temporary custody of the child. 2014 WL 7182075, at *1. The child's father, who lived out of state, attempted contact and visits with the child but was unsuccessful, due somewhat to the grandmother. *Id.* at *2. The grandmother eventually filed a petition to terminate the father's parental rights and to adopt the child in the Chancery Court for Smith County, and the father in response filed a petition to establish

paternity and custody. *Id.* at *1. At the final hearing, the parties agreed that the father was the child's biological parent. *Id.* at *2. The trial court terminated the father's parental rights, reasoning that the father abandoned the child through failure to visit and failure to support and that he should have hired a lawyer sooner than he did. *Id.* at *3.

The father appealed to this Court, raising as one of his issues whether the trial court had jurisdiction over the father's custody petition. *Id.* at *4. This Court agreed with the father, first determining that there was not clear and convincing evidence of abandonment. *Id.* at *5–7. Thus, we reversed the lower court's ruling on the grounds for termination. *Id.* We then proceeded to determine whether the chancery court should have adjudicated the father's pending custody petition. *Id.* at *7. We first noted that pursuant to Tennessee Code Annotated section 36-1-116, "the custody proceedings pending in Davidson County Juvenile Court were suspended pending the court's orders in the adoption proceeding." *Id.* at *8 (quotation omitted).[4] We then reasoned that section 36-1-117(b)(4) was the "second relevant statute" in our analysis. *Id.* In applying section 36-1-117(b)(4), we explained:

> In a pretrial discussion, the parties and the court expressed some confusion about what would happen if no grounds for termination were found. Some thought was given to having to return to the Davidson County Juvenile Court to change its previous custody order.
>
> As already noted, the Juvenile Court's orders affecting custody remained in effect "until the adoption court enters any orders affecting the child's custody or guardianship as permitted by this part...." Tenn. Code Ann. § 36-1-116(f)(2). *This is where Tenn. Code Ann. § 36-1-117(b)(4) comes into play. The statute requires the trial court to grant custody to the legal parent in an adoption proceeding if no grounds for termination exist, unless the*

---

[4] Section 36-1-116 provides in relevant part:

(f)(1) Upon the filing of the [adoption] petition, the court shall have exclusive jurisdiction of all matters pertaining to the child, including the establishment of paternity of a child pursuant to chapter 2, part 3 of this title, except for allegations of delinquency, unruliness or truancy of the child pursuant to title 37; provided, that, unless a party has filed an intervening petition to an existing adoption petition concerning a child who is in the physical custody of the original petitioners, the court shall have no jurisdiction to issue any orders granting custody or guardianship of the child to the petitioners or to the intervening petitioners or granting an adoption of the child to the petitioners or to the intervening petitioners unless the petition affirmatively states, and the court finds in its order, that the petitioners have physical custody of the child at the time of the filing of the petition, entry of the order of guardianship, or entry of the order of adoption, or unless the petitioners otherwise meet the requirements of § 36-1-111(d)(6).

Tenn. Code Ann. § 36-1-116(f)(1).

*court determines by clear and convincing evidence that the father is unable to provide the child with proper custodial care.* Tenn. Code Ann. § 36-1-117(b)(4); Diana L. Schmied, *A Roadmap Through Tennessee's New Adoption Statute*, 27 U. MEM. L. REV. 885, 896–97 (1997) (citing § 36-1-117(b)(4) and stating that "[i]f no grounds to terminate exist [in an adoption proceeding], the father must be granted custody of the child if the mother's rights have already been terminated, unless he is unable to provide proper care for the child."). The clear language of Tenn. Code Ann. § 36-1-117(b)(4) provides the Smith County Chancery Court with the authority to make a custody determination when the grounds for termination of Father's rights are not found.

After considering the relevant statutes and the record in this case, it is evident that the focus of the hearing was abandonment by failure to visit and failure to support, not custody. Therefore, we remand the case to the chancery court for the purpose of making a custody determination pursuant to Tenn. Code Ann. § 36-1-117(4).

*Id.* at \*9 (emphasis added).

Given the factual and procedural similarities between *In re Lyric J.* and the case before us, we are persuaded by Father's reliance on section 36-1-117(b)(4). Here, Father filed a petition to establish paternity and gain custody of the Child a few weeks prior to the filing of the termination and adoption action. Accordingly, the trial court acquired jurisdiction over Father's paternity and custody action. *See id.* Prior to the final hearing in the trial court, Father filed a sworn voluntary acknowledgment of paternity that Mother and Father executed on June 19, 2020. *See* Tenn. Code Ann. § 36-1-102(30)(A)(iv) (defining "legal parent" as, *inter alia*, "[a] man who . . . has signed, pursuant to § 24-7-113, § 68-3-203(g), § 68-3-302, or § 68-3-305(b), an unrevoked and sworn acknowledgment of paternity under Tennessee law"). Accordingly, there seems to be no dispute that Father is the Child's "legal parent" as contemplated by section 36-1-117(b)(4).

As such, we adopt the same approach as the *In re Lyric J.* Court and conclude that this case should be remanded to the trial court "for the purpose of making a custody determination pursuant to Tenn. Code Ann. § 36-1-117[b](4)." 2014 WL 7182075, at \*9. Per the statute, Father "shall be granted custody of the [C]hild, unless the court determines, upon clear and convincing evidence, that the legal father is unable currently to provide proper custodial care for the [C]hild, in which case the court shall make such orders as may be necessary for the [C]hild's care and supervision pursuant to § 37-1-140[.]" Tenn. Code Ann. § 36-1-117(b)(4). To the extent Father is not "suitable to provide for the care of the [C]hild, it shall make such other orders as it may determine are necessary for the [C]hild's care and supervision." *Id.*

Finally, Father asserts that he is entitled to an award of his attorney's fees incurred on appeal, although the basis for the requested fees is not entirely clear. Father argues that principles of equity demand that he be awarded his attorney's fees but cites no statutes or case law supporting such a claim. Rather, Father argues:

> Rule 11 of the Tennessee Rules of Civil Procedure provides that it is an absolute requirement that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances that the pleading is not being filed for an improper purpose, the claims are warranted by existing law, and the allegations or other factual contentions have evidentiary support.
>
> Because the Petition for Emergency Custody filed by Appellant, Brian [T.], was misleading and riddled with falsehoods, proven to be as such during the hearing before the Circuit Court, coupled with the Juvenile Court's reliance on these false representations, this entire case has been contaminated by this ongoing original sin.

The foregoing is not a basis for attorney's fees, as Father has cited essentially no legal authority explaining how he is entitled to fees under these circumstances. We thus decline to grant Father's request.

## CONCLUSION

We affirm the judgment of the Circuit Court for Hamilton County and remand the case for further proceedings consistent with this opinion. The costs of this appeal are taxed to the appellants, Brian T. and Samantha T., for which execution may issue if necessary.

_____
KRISTI M. DAVIS, JUDGE