IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 1, 2024

**IN RE PANDORA G.**

**Appeal from the Juvenile Court for Davidson County**
**No. 273157   Sheila Calloway, Judge**

_____

**No. M2023-01223-COA-R3-PT**

_____

This is a termination of parental rights case. The trial court terminated Appellant/Father's parental rights on the grounds of abandonment by failure to support, substantial noncompliance with the permanency plan, and failure to manifest an ability and willingness to assume custody, and on its finding that termination of parental rights was in the child's best interest. Father appeals. Because Appellee abandoned the ground of substantial noncompliance with the permanency plan, we reverse the trial court's termination of Appellant's parental rights on that ground. We affirm the trial court's termination of Appellant's parental rights on all remaining grounds and on its finding that termination of Appellant's parental rights is in the child's best interest.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court**
**Affirmed in Part; Reversed in Part; and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which ANDY D. BENNETT and KRISTI M. DAVIS, JJ., joined.

Nick Perenich, Nashville, Tennessee, for the appellant, Michael K.[1]

Jonathan Skrmetti, Attorney General and Reporter, and Jordan K. Crews, Senior Assistant Attorney General, for the appellee, Tennessee Department of Children's Services.

_____

[1]In cases involving minor children, it is the policy of this Court to redact the parties' names to protect their identities.

# OPINION

## I. Background and Procedural History

Appellant Michael K. ("Father") and Candace G. ("Mother") are the biological parents of Pandora G. (d/o/b December 2020) (the "Child").[2] On December 29, 2020, the Appellee Department of Children's Services ("DCS") received a referral alleging that the Child was exposed to illegal drugs. On January 4, 2021, DCS interviewed Mother and Father at the hotel room where they resided. Mother tested positive for multiple illegal substances, and Father tested positive for THC. The Child was removed to DCS custody. On January 5, 2021, DCS filed a dependency and neglect petition in the Juvenile Court for Davidson County ("trial court"). The Child was found to be dependent and neglected, and custody remained with DCS. The Child was placed with a foster family, where she has lived since she was eight days old.

On November 10, 2022, DCS filed a petition to terminate Mother and Father's parental rights. Following hearings on June 12 and June 14, 2023, Mother surrendered her parental rights. By order of July 30, 2023, the trial court found that grounds existed to terminate Father's parental rights based on: (1) abandonment by failure to support; (2) substantial noncompliance with the permanency plan; and (3) failure to manifest an ability and willingness to personally assume custody or financial responsibility of the child.[3] The trial court also determined that termination of Father's parental rights was in the Child's best interest. Father appeals.

## II. Issues Presented

Father raises the following issues for review, as stated in his brief:

I. Whether there was clear and convincing evidence to find grounds under T.C.A. § 36-1-113(g)(1) that [Father] abandoned the [C]hild by willfully failing to support the minor [C]hild in the four months prior to the filing of the petition to terminate parental rights.

II. Whether there was clear and convincing evidence to find grounds under T.C.A § 36-1-113(g)(2) that [Father] was substantially noncompliant with the requirements on the permanency plan that were reasonable and related to remedying the conditions which necessitate foster care placement.

---

[2] Mother surrendered her parental rights. She is not a party to this appeal.
[3] In its petition, DCS also alleged grounds of abandonment by failure to visit and failure to establish or exercise paternity. At trial, DCS voluntarily non-suited the ground of failure to visit, and the trial court found that Father established paternity. DCS does not appeal that determination.

III. Whether there was clear and convincing evidence to find grounds under T.C.A. 36-1-113(g)(14) that [Father] failed to manifest an ability or willingness to personally assume legal and physical custody or financial responsibility for the [C]hild and placing the [C]hild in his custody would pose a risk of substantial harm to the welfare of the [C]hild.

IV. Whether there was clear and convincing evidence that termination of [Father's] parental rights was in the [C]hild's best interest.

### III. Standard of Review

"Because the stakes are so profoundly high[ ]" in a termination of parental rights case, the statute "requires persons seeking to terminate a . . . parent's parental rights to prove the statutory grounds for termination by clear and convincing evidence." *In re Audrey S.*, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005). This Court has observed that "[t]his heightened burden of proof minimizes the risk of erroneous decisions." *Id.* (citations omitted). "In light of the heightened burden of proof in termination proceedings . . . [we] must make [our] own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights." *In re Carrington H.*, 483 S.W.3d 507, 524 (Tenn. 2016). The trial court's conclusion that clear and convincing evidence supports termination of parental rights is a conclusion of law that we review *de novo* with no presumption of correctness. *Id.*

We review the trial court's best-interest analysis under the standard of review applicable to mixed questions of fact and law. *In re Taylor B.W.*, 397 S.W.3d 105, 112-113 (Tenn. 2013). Accordingly, we will affirm the trial court's factual findings unless they are not supported by a preponderance of the evidence. *In re Neveah M.*, 614 S.W.3d 659, 674 (Tenn. 2020). Whether the court's factual findings amount to clear and convincing evidence that termination of parental rights is in the child's best interest is a question of law that we review *de novo* with no presumption of correctness. *Id.*

### IV. Analysis

It is well-settled that:

A parent's right to the care and custody of [his or] her child is among the oldest of the judicially recognized fundamental liberty interests protected by the Due Process Clause of the federal and state constitutions. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *In re Angela E.*, 303 S.W.3d 240, 250 (Tenn. 2010); *In re Adoption of Female Child*, 896 S.W.2d 546, 547-48 (Tenn. 1995); *Hawk v. Hawk*,

855 S.W.2d 573, 578-79 (Tenn. 1993). But parental rights, although fundamental and constitutionally protected, are not absolute. *In re Angela E.*, 303 S.W.3d at 250. "'[T]he [S]tate as *parens patriae* has a special duty to protect minors. . . .' Tennessee law, thus, upholds the [S]tate's authority as *parens patriae* when interference with parenting is necessary to prevent serious harm to a child." *Hawk*, 855 S.W.2d at 580 (quoting *In re Hamilton*, 657 S.W.2d 425, 429 (Tenn. Ct. App. 1983)); *see also Santosky v. Kramer*, 455 U.S. 745 (1982); *In re Angela E.*, 303 S.W.3d at 250.

*In re Carrington H.*, 483 S.W.3d at 522-23 (footnote omitted).

In Tennessee, termination of parental rights proceedings are governed by statute, *In re Kaliyah S.*, 455 S.W.3d 533, 541 (Tenn. 2015), and the statutes identify "those situations in which the state's interest in the welfare of a child justifies interference with a parent's constitutional rights by setting forth grounds on which termination proceedings can be brought." *In re Jacobe M.J.*, 434 S.W.3d 565, 568 (Tenn. Ct. App. 2013) (quoting *In re W.B.*, Nos. M2004-00999-COA-R3-PT, M2004-01572-COA-R3-PT, 2005 WL 1021618, at *7 (Tenn. Ct. App. Apr. 29, 2005) (citing Tenn. Code Ann. § 36-1-113(g))) (internal quotation marks omitted).

Tennessee Code Annotated section 36-1-113 governs the termination of parental rights in Tennessee. The statute provides, in relevant part:

(c) Termination of parental or guardianship rights must be based upon:

(1) A finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established; and

(2) That termination of the parent's or guardian's rights is in the best interests of the child.

Tenn. Code Ann. § 36-1-113(c). Therefore, every termination of parental rights case requires the trial court "to determine whether the parent has engaged in a course of action or inaction that constitutes one of the statutory grounds for termination[ ]" and whether termination of the parent's rights is in the child's best interest. *In re Emarie E.*, No. E2022-01015-COA-R3-PT, 2023 WL 3619594, at *3 (Tenn. Ct. App. May 24, 2023) (quoting *In re Donna E.W.*, No. M2013-02856-COA-R3PT, 2014 WL 2918107, at *2 (Tenn. Ct. App. June 24, 2014)). Although the petitioner needs to establish only one of the statutory grounds set out in section 36-1-113(g) to establish grounds, *In re Angela E.*, 303 S.W.3d 240, 250 (Tenn. 2010), we must review the trial court's findings and conclusions as to each ground. *In re Carrington H.*, 483 S.W.3d at 525-26. We turn first to the trial court's finding of grounds for termination of Father's parental rights.

## V. Grounds for Termination of Parental Rights

### A. Abandonment by Failure to Support

Under Tennessee Code Annotated section 36-1-113(g)(1), abandonment, as defined by section 36-1-102, is a ground for termination of parental rights.[4]  The version of section 36-1-102(1)(A)(i) in effect when DCS filed its petition to terminate Father's parental rights in November 2022 defines abandonment, in relevant part, as follows:

> (i) For a period of four (4) consecutive months immediately preceding the filing of a proceeding, pleading, petition, or any amended petition to terminate the parental rights of the parent or parents or the guardian or guardians of the child who is the subject of the petition for termination of parental rights or adoption, that the parent or parents or the guardian or guardians either have failed to visit or have failed to support or have failed to make reasonable payments toward the support of the child[.]

Section 36-1-102(1)(D) provides:

> (D) For purposes of this subdivision (1), "failed to support" or "failed to make reasonable payments toward such child's support" means the failure, for a period of four (4) consecutive months, to provide monetary support or the failure to provide more than token payments toward the support of the child. That the parent had only the means or ability to make small payments is not a defense to failure to support if no payments were made during the relevant four-month period;

It is undisputed that Father made no child support payments.  In his brief, Father submits that he was not ordered to pay child support.  Specifically, "he believed a plan or court order for child support would be set up.  He was never told how much to pay or who he was supposed to pay."  He also asserts that DCS' documents were "misleading and contradictory" with respect to his duty to pay child support and with respect to the burden of proof regarding whether the lack of support was "willful."  He argues that the "Criteria and Procedures for Termination of Parental Rights" provided by DCS suggests that "paying support is predicated on establishing that the parent has the ability to pay for support, prior to starting payments."

---

[4] Tennessee Code Annotated section 36-1-102 was amended twice after DCS filed its petition in November 2022.  The current version of the statute became effective on July 1, 2023.  The version in effect on the date the petition was filed is the applicable version.  ***In re Braxton M.***, 531 S.W.3d 708, 732 (Tenn. Ct. App. 2017).

As Father acknowledges in his brief, "[e]very parent who is eighteen (18) years of age or older is presumed to have knowledge of a parent's legal obligation to support such parent's child or children[.]" Tenn. Code Ann. § 36-1-102(1)(H). At trial, Father testified that he was aware of his requirement to pay child support but "there was never a plan set up." He also testified that a child-support hearing was scheduled; he "knew the court date," "but we never went." Father further testified that he has not been employed since the Child entered DCS custody. He testified that he has "no excuse" for not being employed and that he "really didn't apply" for employment. He also testified that he lost his driver's license for failing to support an older child, who is not the subject of this appeal. The trial court found that Father knew that he had an obligation to support, failed to attend the child-support hearing, and "so he didn't know that there was any child support order."

Under Tennessee Code Annotated section 36-1-102(1)(I), as amended in 2018, the parent or guardian bears the burden of proof to demonstrate that the failure to pay child support was not willful. Additionally, the "absence of willfulness" must be pleaded as an affirmative defense as provided by Rule 8.03 of the Tennessee Rules of Civil Procedure. As Father submits in his brief, the "Criteria and Procedures for Termination of Parental Rights" provided to Father were not updated to reflect the 2018 amendment. However, in December 2022, the trial court appointed counsel to represent Father, and Father was represented at the hearings on June 12 and June 14. From the record, it appears that Father did not file an answer or affirmatively plead the absence of willfulness. Additionally, it is clear that Father knew that he had an obligation to pay child support, was voluntarily unemployed, and made no effort to pay any child support. From the totality of the circumstances, there is clear and convincing evidence to support the trial court's termination of Father's parental rights on the ground of abandonment by failure to provide support. We affirm the trial court's judgment on this ground.

## B. Substantial Noncompliance with the Permanency Plan

In his brief, Father argues that the four permanency plans entered by DCS were inconsistent and misleading. In its brief, DCS acknowledges that the plans were inconsistent and states that it "does not defend the trial court's termination of Father's rights on this ground." Accordingly, we reverse the trial court's termination of Father's parental rights on the ground of substantial noncompliance with the permanency plans.

## C. Ability and Willingness to Assume Custody or Financial Responsibility

Under section 36-1-113(g)(14), parental rights may be terminated on the ground that:

A parent or guardian has failed to manifest, by act or omission, an ability and willingness to personally assume legal and physical custody or financial responsibility of the child, and placing the child in the person's legal and

physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child[.]

If clear and convincing evidence demonstrates that a parent "has failed to manifest either ability or willingness, then the first prong of the statute is satisfied." ***In re Neveah M.***, 614 S.W.3d at 677.

Father is a convicted felon and, in October 2022, he was arrested again and charged with five drug-related offenses (three felonies and two misdemeanors). Although Father posted bond and was released from jail, the charges against him were pending at the time of the hearing on the petition to terminate his parental rights. Again, in January 2023, Father was arrested and charged with four additional drug-related offenses (three felonies and one misdemeanor), and two firearms-related offenses (both felonies). Unable to post bond, Father was incarcerated and was awaiting trial when this matter was heard in June 2023. As noted above, Father was willfully unemployed during the custodial period and paid no child support. Additionally, it is undisputed that he did not have stable housing for most of the custodial period. On November 2, 2022, Father completed a psychological assessment, and the assessors recommended therapy and a medication consult for anxiety disorder, ADHD, and cannabis-use disorder. Although an appointment was arranged, Father testified that he was unable to begin therapy because he was incarcerated.

Incarceration alone is not a ground for the termination of parental rights. ***In re Audrey S.***, 182 S.W.3d 838, 866 (Tenn. Ct. App. 2005). We have observed:

> [A] parent's incarceration serves only as a triggering mechanism that allows the court to take a closer look at the child's situation to determine whether the parental behavior that resulted in incarceration is part of a broader pattern of conduct that renders the parent unfit or poses a risk of substantial harm to the welfare of the child.

***Id.*** However, "[a] parent's decision to engage in conduct that carries with it the risk of incarceration is itself indicative that the parent may not be fit to care for the child." ***Id.***

As Father asserts in his brief, at the time of trial, he had not been convicted of the charges leading to his arrest and incarceration. However, at trial, Father was advised of his Fifth Amendment rights against self-incrimination and was further informed that, in a civil matter, a negative inference may be drawn when those rights are invoked. Father invoked his Fifth Amendment rights in response to questioning relating to whether he sold drugs or was in possession of drugs when arrested. Father also testified that he has no plans with respect to where he will live if he is acquitted or released on bond. He further testified that he has no funds with which to post bond. He stated that, if he is sentenced, it would be preferable for the Child to remain in foster care.

Clear and convincing evidence supports the trial court's determination that "[Father] does not have the ability to provide stable housing [] or [] basic necessities for the child in order to assure she is taken care of and provided for." It also supports the trial court's determination that Father "has repeatedly engaged in behaviors, resulting in his multiple incarcerations, that would place the child in unsafe situations if she were in his care." From the totality of the circumstances, we affirm the trial court's termination of Father's parental rights on this ground and proceed to review of the trial court's best interest analysis.

## VI. Best Interest

Tennessee Code Annotated section 36-1-113(i)(1) contains a non-exclusive list of factors applicable to the court's best-interests analysis. The statute provides:

> (i)(1) In determining whether termination of parental or guardianship rights is in the best interest of the child, the court shall consider all relevant and child-centered factors applicable to the particular case before the court.

The statutory factors are not exclusive but "illustrative . . . and any party to the termination proceeding is free to offer any other factor relevant to the best[-]interests analysis." *In re Gabriella D.*, 531 S.W.3d 662, 681 (Tenn. 2017) (citation omitted). Whether termination is in the child's best interest must be "'viewed from the child's, rather than the parent's, perspective.'" *Id.* (quoting *In re Audrey S.*, 182 S.W.3d at 878). "[W]hen the best interests of the child and those of the adults are in conflict, such conflict shall always be resolved to favor the rights and the best interests of the child[.]" *Id.* (quoting Tenn. Code Ann. § 36-1-101(d) (2017)). The court's "'focus on the perspective of the child is the common theme' evident in all of the statutory factors." *In re Neveah M.*, 614 S.W.3d 659, 679 (Tenn. 2020) (quoting *In re Audrey S.*, 182 S.W.3d at 878).

The trial court's best-interest analysis requires "more than a 'rote examination' of the statutory factors." *In re Neveah M.*, 614 S.W.3d at 679 (quoting *In re Audrey S.*, 182 S.W.3d at 878). Further, it "consists of more than tallying the number of statutory factors weighing in favor of or against termination." *Id.* (citing *White v. Moody*, 171 S.W.3d 187, 193-94 (Tenn. Ct. App. 2004)). Although the court must consider all the statutory factors and other relevant proof, some factors may weigh more heavily than others in light of the circumstances surrounding the particular child and parent. *Id.* (quotation omitted). Indeed, the trial court "may appropriately ascribe more weight—even outcome determinative weight—to one statutory factor or rely upon fewer than all of the statutory factors." *Id.* (citation omitted).

The trial court's factual findings relevant to the best-interest analysis must be supported by a preponderance of the evidence. *In re Kaliyah S.*, 455 S.W.3d at 555 (citation omitted). Additionally, the court must determine whether the combined weight of the facts amounts to clear and convincing evidence that termination of parental rights is

in the child's best interest. *Id.* (citation omitted). As noted above, we review the trial court's best-interest analysis under the standard of review applicable to mixed questions of fact and law. *In re Taylor B.W.*, 397 S.W.3d at 112-113. We will affirm the trial court's factual findings unless they are unsupported by a preponderance of the evidence. *In re Neveah M.*, 614 S.W.3d at 674 (citations omitted). Whether the court's factual findings amount to clear and convincing evidence that termination of parental rights is in the child's best interest is a question of law that we review *de novo* with no presumption of correctness. *Id.* (citations omitted).

In terminating Father's parental rights, the trial court considered the statutory factors set out below and made the following findings concerning each:

> (A) The effect a termination of parental rights will have on the child's critical need for stability and continuity of placement throughout the child's minority; [Tenn. Code Ann. § 36-1-113(i)(1)(A)]

Concerning this factor, the trial court found:

> It is in the [C]hild's best interests for termination to be granted, as to [Father] as the [C]hild has a critical need for stability and continuity of placement through her minority. [Father] cannot provide the [C]hild any type of permanency, will be unavailable to take custody of the [C]hild at an early date, and the [C]hild would be unsafe if placed in [Father's] care. In contrast the [C]hild is in a foster home where she is stable, loved, and she can receive permanency expeditiously once placed in full guardianship.
>
> (B) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological, and medical condition; [Tenn. Code Ann. § 36-1-113(i)(1)(B)]

As to this factor, the trial court found:

> It is in the [C]hild's best interests for termination to be granted, as to [Father] because a change in caretakers and physical environment is likely to have a negative effect on the [C]hild's emotional, psychological and or medical condition. The [C]hild has been in the same foster home since she entered foster care shortly after her birth. The [C]hild is bonded with her foster family and has not had any visitation with [Father] in a significant period of time. The [C]hild has only ever resided with [Father] for just a few days following her birth. Removing the [C]hild from the only home and family she has ever really known would have devastating consequences for her well-being. [Father] is incarcerated and does not have the availability or any stability to meet the [C]hild's basic needs. In contrast, the [C]hild is receiving exemplary

- 9 -

care in her foster home where she is loved, thriving, and deeply bonded with her foster family.

(C) Whether the parent has demonstrated continuity and stability in meeting the child's basic material, educational, housing, and safety needs; [Tenn. Code Ann. § 36-1-113(i)(1)(C)]

Here, the trial court found:

[Father] has failed to demonstrate continuity and stability in meeting the [C]hild's basic material, educational, housing and safety needs. [Father] is currently incarcerated, unavailable to take custody of the [C]hild, and is facing a multi-year sentence as a result of his pending criminal charges. Additionally, he has no plans for housing or employment if and when he is released from incarceration.

(D) Whether the parent and child have a secure and healthy parental attachment, and if not, whether there is a reasonable expectation that the parent can create such attachment; [Tenn. Code Ann. § 36-1-113(i)(1)(D)]

Regarding this factor, the trial court found:

[Father] and [C]hild do not have a healthy and secure attachment and there is no reasonable expectation that [Father] can create such an attachment. [Father] has not visited the [C]hild in a significant period of time due to his incarceration.

(E) Whether the parent has maintained regular visitation or other contact with the child and used the visitation or other contact to cultivate a positive relationship with the child; [Tenn. Code Ann. § 36-1-113(i)(1)(E)]

Concerning this factor, the trial court found that Father "has failed to maintain visitation or other contact with the [C]hild. [Father] has not visited the [C]hild in a significant period of time due to his incarceration."

\*\*\*

(H) Whether the child has created a healthy parental attachment with another person or persons in the absence of the parent; [Tenn. Code Ann. § 36-1-113(i)(1)(H)]

Here, the trial court found that the Child "has created a healthy parental attachment with another person or persons in the absence of the parents. The [C]hild is thriving and loved

in her foster home. She is deeply bonded with her foster mother who she has resided with for the majority of her life."

> (I) Whether the child has emotionally significant relationships with persons other than parents and caregivers, including biological or foster siblings, and the likely impact of various available outcomes on these relationships and the child's access to information about the child's heritage; [Tenn. Code Ann. § 36-1-113(i)(1)(I)]

As to this factor, the trial court found that "the [C]hild is without an emotionally significant relationship with [Father] and the biological family and therefore there would not be a significant impact on the outcomes of those relationships by terminating parental rights."

> (J) Whether the parent has demonstrated such a lasting adjustment of circumstances, conduct, or conditions to make it safe and beneficial for the child to be in the home of the parent, including consideration of whether there is criminal activity in the home or by the parent, or the use of alcohol, controlled substances, or controlled substance analogues which may render the parent unable to consistently care for the child in a safe and stable manner; [Tenn. Code Ann. § 36-1-113(i)(1)(J)]

Concerning this factor, the trial court found that Father "has failed to demonstrate a lasting adjustment of circumstances, conduct, or conditions to make it safe and beneficial for the [C]hild to be in his home. [Father] is currently incarcerated and unavailable to assume custody of the [C]hild."

> (K) Whether the parent has taken advantage of available programs, services, or community resources to assist in making a lasting adjustment of circumstances, conduct, or conditions; [Tenn. Code Ann. § 36-1-113(i)(1)(K)]

Here, the trial court found that Father

> continues to engage in criminal activity, which may render him unable to consistently care for the [C]hild in a safe and stable manner. [Father] is currently incarcerated for multiple charges related to the sale of drugs. [Father's] charges have not been adjudicated and he is facing an eight-year sentence at thirty (30) percent as his best-case scenario. [Father] has placed himself in a position that he will be unavailable to take custody of the [C]hild any time in the immediate future.

\*\*\*

[Father] continues to use alcohol and controlled substances, which may render him unable to consistently care for the child in a safe and stable manner. [Father] is currently incarcerated for drug related charges and admitted that he has continued to use THC.

\*\*\*

[Father] has failed to take advantage of available programs, services, or community resources to assist in making a lasting adjustment of circumstances, conduct or conditions. [Father] has not substantially completed any of the tasks set out for him on the permanency plans. . . . [Father] has failed to make a lasting adjustment of circumstances despite the efforts made by [DCS] to assist.

\*\*\*

(M) Whether the parent has demonstrated a sense of urgency in establishing paternity of the child, seeking custody of the child, or addressing the circumstance, conduct, or conditions that made an award of custody unsafe and not in the child's best interest; [Tenn. Code Ann. § 36-1-113(i)(1)(M)]

Concerning this factor, the trial court found that Father, "has failed to demonstrate any sense of urgency in seeking custody of the [C]hild. Instead, [Father] has abandoned the [C]hild to the foster care system."

\*\*\*

(O) Whether the parent has ever provided safe and stable care for the child or any other child;

(P) Whether the parent has demonstrated an understanding of the basic and specific needs required for the child to thrive;

(Q) Whether the parent has demonstrated the ability and commitment to creating and maintaining a home that meets the child's basic and specific needs and in which the child can thrive;

(R) Whether the physical environment of the parent's home is healthy and safe for the child;

(S) Whether the parent has consistently provided more than token financial support for the child; and

- 12 -

(T) Whether the mental or emotional fitness of the parent would be detrimental to the child or prevent the parent from consistently and effectively providing safe and stable care and supervision of the child.

Tenn. Code Ann. §§ 36-1-113(i)(1)(O)-(T). As to statutory factors O through T, the trial court made the following findings:

50. It is in the [C]hild's best interests for termination to be granted, as to [Father], as [Father] has never provided a safe and stable environment to care for the [C]hild. The [C]hild has only ever resided with [Father]for a limited number of days following her birth.
51. It is in the [C]hild's best interests for termination to be granted, as . . . [Father] cannot demonstrate an understanding of the basic and specific needs required for the [C]hild to thrive. [Father]has no means or ability to provide for the [C]hild's basic needs or even provide her with a home.
52. It is in the [C]hild's best interests for termination to be granted, as . . . [Father] has failed to demonstrate the ability and commitment to creating and maintaining a home that meets the [C]hild's basic and specific needs in which the [C]hild can thrive. [Father] has never provided a home for the [C]hild and is currently incarcerated an unavailable to assume custody of the [C]hild.
53. It is in the [C]hild's best interests for termination to be granted. . . as the physical environment of the [Father's] home is unhealthy and unsafe. [Father] Kennedy is currently incarcerated and cannot assume custody of the child.
54. It is in the [C]hild's best interests for termination to be granted. . . as [Father] has failed to consistently provide support to the [C]hild. [Father] admitted that he has willfully never paid support towards the care of the [C]hild.
55. It is in the [C]hild's best interests for termination to be granted. . . as the mental or emotional fitness of [Father] would be detrimental to the [C]hild and would prevent [Father] from consistently and effectively providing safe and stable care and supervision of the [C]hild. [Father] continues to engage in criminal behaviors which render him an unfit and unsuitable custodian as well as him unavailable to assume custody of the [C]hild.

From our review, the trial court's findings are supported by the record. Since she was eight-days old, the Child has lived in the same foster home, and the record supports the trial court's finding that she does not have a parental bond with Father. It is undisputed that Father has no means to support or house the Child. This situation will likely continue as Father was arrested twice while this matter was pending and is now incarcerated. In fact, Father testified that it would be in the Child's best interest to remain in foster care for the

duration of his incarceration. There is no indication as to how long Father's incarceration will last. Meanwhile, the Child has thrived in her foster home, where she has found love and stability. All of the Child's needs are met, and she has bonded with the foster family. The foster mother testified that the foster family "absolutely" wishes to adopt the Child. Early integration into the only stable home the Child has ever known would only be stymied by the continuation of Father's parental rights. In view of the circumstances, including Father's ongoing incarceration, and the lack of any bond between the Child and Father, we conclude that there is clear and convincing evidence to support the trial court's findings as to each of the foregoing factors. The combined weight of those findings clearly and convincingly supports the trial court's ultimate determination that termination of Father's parental rights is in the Child's best interest.

## VII. Conclusion

For the foregoing reasons, we reverse the trial court's termination of Father's parental rights on the ground of substantial noncompliance with the permanency plan. We affirm the trial court's termination of Father's parental rights on the remaining grounds and on its finding that termination is in the Child's best interest. The case is remanded for further proceedings as may be necessary and as are consistent with this Opinion. Costs of the appeal are assessed to Appellant, Michael K. Because Appellant is proceeding *in forma pauperis* in this appeal, execution for costs may issue if necessary.

s/ Kenny Armstrong
KENNY ARMSTRONG, JUDGE